*CABINETS SOUTHWEST, Inc.*
Petitioner
*vs.*
*NAVAJO NATION LABOR COMMISSION*
Respondent
*and concerning*
*Randall and Deniece Haven*
Real Parties in Interest.

In the Supreme Court of the Navajo Nation

No. SC-CV-46-03
February 10, 2004

441

Patterson V. Joe, Esq., Flagstaff, Arizona, for Petitioner.

Raymond C. Etcitty, Window Rock, Navajo Nation, and David Gover, Esq., Window Rock, Navajo Nation, for Respondent.

Randall and Deniece Haven, *pro se*, Church Rock, Navajo Nation, for Real Parties in Interest.

Before BATES ARTHUR, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by FERGUSON, Associate Justice.

This case is before this Court on a petition for a writ of prohibition against the Navajo Nation Labor Commission on the grounds that the Labor Commission lacks subject matter jurisdiction over the Petitioner and that the claims by the Real Parties in Interest are barred by *res judicata*. We deny the writ of prohibition.

I

The facts are taken from the parties' pleadings. Petitioner Cabinets Southwest, Inc. (Cabinets) is a subsidiary of Navajo Housing Authority (NHA) formed under the Navajo Nation Corporation Code. NHA approved Cabinets' articles of incorporation by resolution, under the authority granted to NHA by the Navajo Nation Code. The articles of incorporation state that Cabinets will abide by Navajo law.

NHA entered into a lease with the Navajo Nation for a parcel of land held in fee by the Navajo Nation near Church Rock, New Mexico for the purpose of manufacturing cabinets for NHA residential units. The lease indicates that NHA and its employees, agents and sublessees would follow Navajo law. Though no sublease is in the record, it appears that Cabinets operates the cabinet plant on the fee parcel under the authority of its articles of incorporation and the lease.

Real Parties in Interest, Randall and Deniece Haven, were employees of Cabinets and worked at the plant. In early 2002 Cabinets terminated the Havens. The Havens requested arbitration to challenge their terminations. The arbitrator

upheld their terminations, and the Havens filed complaints with the Navajo Nation Labor Commission under the Navajo Preference in Employment Act (NPEA), 15 N.N.C. §§ 601 *et seq.*

In the Labor Commission proceeding Cabinets filed two separate motions to dismiss the complaint. In its first motion, Cabinets claimed the NPEA did not apply to it, and therefore the Labor Commission lacked jurisdiction over the Haven's claims, because the plant is outside the territorial jurisdiction of the Navajo Nation. The Labor Commission denied that motion. After our decision in *Peabody Western Coal Co. v. Navajo Nation Labor Commission*, 8 Nav. R. 313 (Nav. Sup. Ct. 2003), Cabinets filed another motion to dismiss, claiming the Haven's complaints were barred by *res judicata*. The Labor Commission denied that motion, and held a hearing on the merits of the claim.

The Labor Commission planned to have two more days of hearings when Cabinets filed the petition for a writ of prohibition before this Court. In its petition Cabinets repeats the arguments it made in the motions to dismiss filed before the Labor Commission: (1) the NPEA does not apply outside the territorial jurisdiction of the Navajo Nation, and therefore does not reach its plant on fee land owned by the Nation, and (2) the Haven's claims are barred by *res judicata* due to the previous decision by the arbitrator. The Labor Commission was not named in the petition for the writ of prohibition, but we allowed the Commission to intervene in this matter. We granted an alternative writ to stay the Labor Commission's proceedings, and allowed further briefing on the issues.

## II

The issues presented are (1) whether the Navajo Nation Labor Commission lacks subject matter jurisdiction over a subsidiary of NHA when the subsidiary operates on land owned in fee by the Navajo Nation under a lease that includes the explicit consent to be bound by Navajo law, and (2) whether a defense of *res judicata* goes to the subject matter jurisdiction of the Navajo Nation Labor Commission such that a writ of prohibition is a proper remedy for a party seeking to stop the Commission from hearing the case.

## III

Petitioner seeks a writ of prohibition because it claims that the property on which it operates is outside the territorial jurisdiction of the Navajo Nation, and therefore outside the reach of the NPEA. Specifically, Petitioner argues that the NPEA only applies to employers within the territorial jurisdiction of the Navajo Nation, and that the fee parcel owned by the Navajo Nation and leased to NHA is outside the Nation's territorial jurisdiction. Petitioner claims that, regardless of any Navajo Nation definition of its territorial jurisdiction, *e.g.* 7 N.N.C. § 254 (1995), which definition includes land owned in fee by the Nation, the Labor Commission must show that the parcel is a "dependent Indian community" under the federal Indian Country statute, 18 U.S.C. § 1151, and the United States

Supreme Court's decision in *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520 (1998).

After reviewing the documents submitted by both sides in this case, we believe we do not have to reach the question of whether the parcel is within the territorial jurisdiction of the Navajo Nation. This is because Cabinets is bound by an explicit consent to Navajo jurisdiction in the lease between NHA and the Navajo Nation. Petitioner makes much of the language in the NPEA that defines the territorial reach of the act. However, the act prohibits termination without just cause by all employers doing business "within the territorial jurisdiction [or near the boundaries] of the Navajo Nation, or engaged in any contract with the Navajo Nation." 15 N.N.C. §§ 604(A), (B)(8) (emphasis added).[1] Petitioner focuses on the first part of the phrase, arguing that the fee parcel where its office is located is not "within the territorial jurisdiction of the Navajo Nation," as it is not a "dependent Indian community." However, we focus on the language following the word "or," which provides an alternative for jurisdiction by applying the NPEA to employers "engaged in any contract with the Navajo Nation." This language disposes of this case.

A

The record in this case includes a lease between the Navajo Nation and NHA for the fee parcel at issue that explicitly acknowledges the reach of the NPEA to Cabinets' activities. That lease, approved by the Economic Development Committee of the Navajo Nation Council and executed by the Navajo Nation President and the Executive Director of NHA, was made for the specific purposes of "the manufacturing and sale of residential cabinets and for all other purposes consistent with this purpose." Lease Agreement, ¶ 3. In the lease NHA agreed that it and its "employees, agents, and Sublessees and their employees and agents ... [will] abide by all laws, regulations, and ordinances of the Navajo Nation[.]" *Id.*, ¶ 35. Further, NHA separately consented to "the legislative, executive and judicial jurisdiction of the Navajo Nation in connection with all activities conducted by [NHA]." *Id.*, ¶ 37. Under the clear language of these sections, the activities on the fee parcel, the manufacture and sale of cabinets, is subject to the NPEA regardless of the exact status of the parcel itself.

The only question is whether NHA's consent to jurisdiction is binding on Cabinets. Cabinets argues that holding it to the language in the NHA lease would create a "legal fiction," as it claims to be a separate legal entity. Reply Memorandum in Support of Petition for Writ of Prohibition at 5. That argument misses the point. As previously observed, NHA agreed that any of its "employees, agents, and Sublessees" would be equally bound by Navajo law. The issue is then whether Cabinets is an employee, agent or sublessee of NHA.

Documents in the record show Cabinets' origin and its relationship to NHA.

---

[1] Petitioner alleges that the words "[or near the boundaries]" is not properly in the codification of the NPEA in the Navajo Nation Code. As we do not need to address this argument for our decision, we make no comment.

NHA formed Cabinets as a subsidiary of NHA to operate the cabinet business referenced in the lease with the Navajo Nation. Resolution No. NHA-3016-98, Whereas clause nos. 3, 4 (March 5, 1998). Cabinets incorporated as a non-profit entity under the Navajo Nation Non-Profit Corporation Act, 5 N.N.C. §§ 3301 *et seq.* Article of Incorporation at 1. NHA approved the articles of incorporation under the power granted by the Navajo Nation Code in 6 N.N.C. §§ 605, 616(b)(14). *Id.*, Whereas clause no. 1.

The fact that Cabinets is a subsidiary organized by NHA under the Navajo Nation Corporation Code for the very purposes of the lease leads to the conclusion that it is an "agent" of NHA bound by the consent to jurisdiction in the lease.[2] Cabinets' claim that it has not consented to the NPEA therefore fails. Acceptance of Cabinets' argument that it is a separate entity not bound by NHA's consent would allow corporations with consent clauses in leases with the Navajo Nation to form subsidiaries for the sole purpose of avoiding application of Navajo law. We cannot endorse such an argument.

If the lease provisions were not enough, Cabinets' own articles of incorporation state that it "shall abide by all criminal, civil and regulatory laws of the Navajo Nation." Article XIII. The NPEA is a regulatory law of the Navajo Nation. Therefore Cabinets' own organic document, filed under the laws of the Navajo Nation, and necessary for its very existence, explicitly acknowledges the applicability of Navajo Nation laws. It is absurd that an entity organized under Navajo law that explicitly consents to Navajo law in its organic document and operates on a parcel leased from the Navajo Nation under a lease explicitly consenting to Navajo law would still insist it is not bound by Navajo law.[3]

---

2 There is no evidence in the record that NHA executed a sublease with Cabinets for the parcel it leased from the Navajo Nation. If there is a sublease, under the express language of the lease, NHA was separately bound to require the consent of Cabinets to the laws of the Navajo Nation. Lease Agreement at ¶ 35. If there is no sublease, this fact bolsters the conclusion that it is an "agent" of NHA, as no separate agreement between NHA and Cabinets was considered necessary for Cabinets to operate on the property.

3 Additionally, Cabinets' very purpose for existing, according to its articles of incorporation, is to employ and empower Navajo tenants. According to its articles of incorporation, the purposes of Cabinets are to promote 'Tenant Self-Sufficiency by creating economic opportunities and thriving employment environments … and the conduct of any lawful affairs for which corporations may be incorporated under the laws of the Navajo Nation." Articles of Incorporation, Article III. As the vast majority of tenants in NHA units by definition are Navajo, Cabinets' reference to "Tenant Self-Sufficiency" means that its primary purpose is to employ Navajos. Application of the NPEA therefore is entirely consistent with that purpose, as the NPEA assures Navajo (and other) employees that they will not be treated unfairly in hiring and firing, and therefore creates "economic opportunities and a thriving employment environment[.]"

## B

In a last attempt to avoid its clear and multiple consents to the applicability of the NPEA, Cabinets argues that any such consent is not binding because a party can never consent to subject matter jurisdiction, citing several state and federal cases. Reply Memorandum in Support of Petition for Writ of Prohibition at 4-5. Cabinets implies that any consent, however clear and unequivocal, is ineffective if it occurs or affects activity outside the territorial jurisdiction of the Navajo Nation because the Nation lacks subject matter jurisdiction outside of its territorial boundaries. In other words, subject matter jurisdiction extends no further than territorial jurisdiction.

That is not always the case. For corporations formed under Navajo law (Navajo corporations), subject matter jurisdiction exists beyond the Nation's territorial jurisdiction. Such a concept is hardly unique. The United States Supreme Court has recognized the ability of Congress to exert extra-territorial authority over American corporations and their treatment of employees, the question being whether Congress intended to extend employment regulations outside its territory. *Equal Employment Opportunity Comm'n v. Arabian American Oil Co.*, 499 U.S. 244, 247-249 (1991). We believe the Navajo Nation possesses the same authority over corporations organized under Navajo law, as such corporations elected to incorporate under Navajo law, and therefore must abide by Navajo law as a condition of their existence. *Cf.* 5 N.N.C. § 3107(A)(10) (requiring explicit agreement by for-profit corporations to abide by Navajo law in articles of incorporation). The only remaining question is then whether the Navajo Nation Council intended to extend the NPEA to Navajo corporations outside the territory of the Navajo Nation.

## C

The Council clearly intended to apply the NPEA to Navajo corporations when they have contracts with the Nation, regardless of the status of the land where the contract is performed. 15 N.N.C. § 604(A) extends the NPEA separately to (1) activities within the territorial jurisdiction of the Navajo Nation, and to (2) activities performed under contracts with the Navajo Nation. We hold that the Navajo Nation's NPEA subject matter jurisdiction extends to the activities of Navajo corporations under contracts with the Nation, whether or not the contract is to be performed within the territorial jurisdiction of the Nation.[4] Cabinets is a Navajo corporation and is bound by NHA's lease with the Navajo Nation. The NPEA therefore extends to Cabinets.

Because of the lease, Cabinets specifically consented to the application of the NPEA, and whether or not the parcel is within the territorial jurisdiction of the Navajo Nation, it is bound by that consent. Further, the Navajo Nation has

---

4 It is unnecessary in this case to decide whether the NPEA's jurisdiction extends to contracts with foreign corporations (that is, corporations formed under the laws of another jurisdiction) registered with the Navajo Nation, but performed outside the territorial jurisdiction of the Navajo Nation.

the authority to regulate Navajo corporations outside its territory. The Navajo Nation Council explicitly intended that the NPEA apply to Navajo corporations when they have contracts with the Nation, regardless of the status of the land where the contract is to be performed. We will not issue a permanent writ of prohibition for lack of jurisdiction of the NPEA over Cabinets' activities in this case.

## IV

Cabinets' other argument to justify the issuance of a permanent writ is that the Havens' claims are barred by *res judicata* because they have already adjudicated them in an arbitration. Cabinets cites our decision in *Peabody Western Coal Co. v. Navajo Nation Labor Commission*, 8 Nav. R. 313 (Nav. Sup. Ct. 2003). In that case we issued a writ of prohibition because the claims of the Real Party in Interest, Silverhatband, were barred by *res judicata*. *Id*. at 321.

### A

The first question is the scope of a writ of prohibition. We clarify here that we will issue a writ of prohibition only for defects in the jurisdiction of a court or administrative body. *Yellowhorse, Inc. v. Window Rock District Court*, 5 Nav. R. 85, 87 (Nav. Sup. Ct. 1986). In a proceeding for a writ of prohibition, the primary concern is whether the lower court or administrative body is proceeding without, or in excess of its jurisdiction. *Id*. The focus is on jurisdiction. *Id*. Therefore we will not issue a writ unless the claims of the petitioner have "jurisdictional significance." *Id*.

### B

The issue here is whether preclusion under the doctrine of *res judicata* is of "jurisdictional significance." We did not explicitly state that the doctrine of *res judicata* was jurisdictional in *Peabody*, but nonetheless issued a writ of prohibition. That case began as a petition for a writ of prohibition on two theories: (1) federal preemption, and (2) *res judicata*. The preemption claim went to the Labor Commission's subject matter jurisdiction, while the *res judicata* claim did not. This Court decided the case was barred by *res judicata*, and did not reach the actual jurisdictional issue concerning preemption. However, this Court issued the writ on the *res judicata* theory.

We feel a writ of prohibition is not justified for claims of *res judicata*. *Res judicata* is not a defect going to the subject matter jurisdiction of a court or the Labor Commission. 63C Am. Jur. 2d Prohibition § 65 (2003). Therefore a writ of prohibition is inappropriate in such cases. *Id*. Under the Navajo Rules of Civil Procedure, if the party seeking preclusion fails to file a motion to dismiss before the answer to the complaint, or to plead it as an affirmative defense in the answer, *res judicata* defenses are waived. Because *res judicata* can be waived, it is not a jurisdictional defect. We therefore reject any suggestion in *Peabody* that *res judicata* alone is an appropriate reason to issue a writ of prohibition. A party

has an adequate remedy by filing a regular appeal and asserting its *res judicata* defense if that defense is improperly rejected by the trial court or administrative body.

Because we will not issue a writ of prohibition solely on a *res judicata* claim, we decline to issue the writ in this case on that ground.

## V

The Navajo Nation has subject matter jurisdiction over Cabinets' activities at the cabinet plant, and therefore can apply the NPEA to its conduct in terminating the Havens. Further, *res judicata* is not a jurisdictional defect, and therefore cannot sustain a writ of prohibition. The petition for a writ of prohibition is therefore DENIED.