OPINION

This consolidated case is about whether the Navajo Nation Labor Commission (Commission) can hear complaints alleging wrongful termination against public school districts organized under the laws of the State of Arizona. The Court holds that the Commission can hear such complaints, and denies Petitioners’ requests for writs of prohibition.
*581 i
The relevant facts are as follows. Petitioners are two school districts organized under the laws of the State of Arizona and operating schools within the Navajo Nation (Nation). According to the representations of the parties, all but one of the board members of the districts are Navajo. Both districts operate apparently under leases issued by the Nation; the leases contain no language setting out whether Arizona or Navajo employment law applies to the districts.[1] Petitioner Real Party in Interest Yellowhair and Real Parties in Interest Helena Hasgood, Harvey Has-good, and Luticia Pete (collectively “Real Parties”) were employees of the Petitioners. When hired, each signed employment contracts. Real Party Yellowhair’s contract states that the agreement is “governed by the laws of the State of Arizona and exclusively in its courts.” Contract, Petition of Red Mesa School District, Exhibit B, ¶ XVII. The other Real Parties’ contracts state that the employee agrees to “abide by the applicable laws of the State of Arizona.” Contracts, Petition of Cedar Unified School Dist., Exhibits B, C, and D. Petitioners terminated them, and Real Parties filed complaints with the Commission under the Navajo Preference in Employment Act (NPEA) alleging Petitioners fired them without “just cause.” See 15 N.N.C. § 604(B)(8) (2005).
After the Commission denied motions to dismiss Real Parties’ claims, Petitioners filed requests for writs of prohibition with this Court. The Court issued alternative writs of prohibition staying the Commission proceedings. The Court invited ami-cus briefs, and the Navajo Nation, the State of Arizona, and the Arizona School Risk Retention Trust[2] filed briefs. The Court held oral argument at Red Mesa Chapter House on July 19, 2007.[3] After the oral argument, the Court invited the parties and amici to farther brief the Court on the effect, if any, of a recent Tenth Circuit opinion, Macarthur v. San Juan County, 497 F.3d 1057 (2007).
II
The issues in the case are 1) whether the Commission has subject matter jurisdiction over public school districts organized under the laws of the State of Arizona that operate schools within the Navajo Nation, 2) whether public school districts have sovereign immunity from Navajo Preference in Employment Act claims, 3) whether the State of Arizona is an indispensable party in NPEA *582 claims against public school districts, 4) whether employees and employers may waive the NPEA through contracts that contain a choice of law clause mandating application of Arizona law, 5) whether enforcement of the NPEA against a public school district violates federal law, and 6) whether the Court as a matter of comity should defer to Arizona law.
Ill
Petitioners first contend that the Commission lacks subject matter jurisdiction over claims against public school districts. They argue that as political subdivisions of the State of Arizona and as “non-Indian” entities[4] the Nation has no authority to require them to follow the NPEA. They essentially argue that state entities are completely exempt from the Nation’s regulation, even when they operate on trust lands under a lease with the Nation. They argue that they are obliged to follow Arizona statutory law on employment, and cannot follow the NPEA without violating that law. They further argue that the Nation must fulfill one of the two prongs of the Montana v. United States test for tribal regulatory jurisdiction under Federal Indian law. See 450 U.S. 544, 565-66, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). As the leases contain no explicit consent to Navajo employment regulation, Petitioners claim to have no “consensual relationship” as required by Montana. See 450 U.S. at 565, 101 S.Ct. 1245. They also argue that applying state law to their employees is not conduct that “threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Id. at 566, 101 S.Ct. 1245.
Petitioners’ challenge is the latest in a series of challenges to the Commission’s authority to apply the NPEA. Since the passage of the NPEA, employers, both private and public, have urged this Court to prohibit the Commission from enforcing the NPEA against them. See Thinn v. Navajo Generating Station, 7 Am. Tribal Law 558, 2007 WL 5601033 (Nav.Sup.Ct.2007); Jackson v. BHP Minerals, 5 Am. Tribal Law 446, 2004 WL 5658532 (Nav.Sup.Ct.2004); Office of Navajo Labor Relations ex rel. Bailon v. Central Consolidated Dist. School No. 22, 5 Am. Tribal Law 412, 2004 WL 5658164 (Nav.Sup.Ct.2004); Cabinets Southwest Inc. v. Navajo Nation Labor Comm’n, 5 Am. Tribal Law 378, 2004 WL 5658063 (Nav.Sup.Ct.2004); Manygoats v. Atkinson Trading Company, Inc., 4 Am. Tribal Law 655, 2003 WL 25794039 (Nav.Sup.Ct.2003); Office of Navajo Labor Relations ex rel. Jones v. Central Consolidated Dist. No. 22, 4 Am. Tribal Law 599, 2002 WL 34461241 (Nav.Sup.Ct.2002); Tuba City Dist. Ct. v. Sloan, 3 Am. Tribal Law 508, 2001 WL 36173245 (Nav.Sup.Ct.2001); Stago v. Wide Ruins Community School, 4 Am. Tribal Law 614, 2002 WL 34461286 (Nav.Sup.Ct.2001); Arizona Public Service Co. v. Office of Navajo Labor Relations, 6 Nav. R. 246 (1990). This Court has rejected those challenges. See id.
*583 Under existing precedent, the Commission may apply the NPEA to Petitioners. In Dale Nicholson Trust v. Chavez, this Court held that the Treaty of 1868 recognizes the Nation’s authority to exclude and therefore regulate non-Indian entities on trust land. 5 Am. Tribal Law 365, 371, 2004 WL 5658105, *6 (Nav.Sup.Ct.2004). Under its Treaty authority, the Nation does not have to fulfill the Montana test. Id. at 371-72, 2004 WL 5658105, **6-7. This authority Includes state officials; there is no exemption because the officials are acting under state law. Id. at 371-72, 2004 WL 5658105, **6-7.[5] Under these principles, school districts organized under state law are subject to the NPEA when they operate on trust lands within the Nation. Bailón, 5 Am. Tribal Law 412, 414, 416, 2004 WL 5658164, *2, *4. Absent an unmistakable waiver of the Nation’s authority to regulate employment, all lessees, including public school districts must comply with the NPEA. Id,; see also Thinn, 7 Am. Tribal Law 558, 561-62, 2007 WL 5601033, **2-3; 10 N.N.C. § 499(D) (as amended by Navajo Nation Council Resolution No. CJY-37-05) (stating that all school lessees “are subject to the laws of the Navajo Nation in regard to the occupation of and activities conducted upon the leased premises”). There is no language unmistakably waiving the Nation’s jurisdiction in the leases in this case.[6] Petitioners present no reason to overrule this Court’s previous opinions.[7] The Na *584 tion may therefore validly apply the NPEA to Petitioners. Regardless of their obligations to follow Arizona law, when operating within the Nation, they must follow Navajo law. Cf. Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148-49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (Indians are subject to non-discriminatory state laws when operating within state territory). If there is an inconsistency, Navajo law must govern, absent a valid waiver of that law.[8]
IV
Petitioners next argue that even if the Commission generally has subject matter jurisdiction, they as state entities are nonetheless immune from suit. Petitioners argue the Eleventh Amendment of the United States Constitution protects them as political subdivisions of the State of Arizona from suit without their consent. As there has been no consent, they contend this Court is obliged to enjoin the Commission from hearing Real Parties’ claims.
This Court has previously held that the Eleventh Amendment does not grant state school districts immunity from NPEA claims. Jones, 4 Am. Tribal Law at 599, 600-02, 2002 WL 34461241, **1-3. Even if the Eleventh Amendment applied in a tribal administrative tribunal, Petitioners are not the State of Arizona for purposes of the amendment. The Ninth Circuit has held that school districts in Arizona are not the State of Arizona for purposes of the Eleventh Amendment, and do not share the State of Arizona’s immunity from suit. See Savage v. Glendale Union High School, 343 F.3d 1036, 1040 (9th Cir.2003). The Arizona Supreme Court also does not consider school districts to be the State. See Amphitheater Unified School Dist. No. 10 v. Harte, 128 Ariz. 233, 235, 624 P.2d 1281 (1981). Peti *585 tioners’ home jurisdictions do not recognize Petitioners’ status as “the State of Arizona” or its alleged sovereign immunity; it would be odd for the Navajo Nation to nonetheless recognize such immunity. Cf. Bradley v. Lake Powell Medical Center, 7 Am. Tribal Law 508-09, 2007 WL 5886718, *6 (Nav.Sup.Ct.2007) (noting same for res judicata effect of Arizona unemployment tribunal decision). The Court holds that Petitioners are not immune from Real Parties’ claims.
V
Petitioners next contend that the Real Parties’ claims must be dismissed because the State of Arizona is an “indispensable party” that must be joined in the Commission cases.[9] Petitioners apparently believe that Rule 19 of the Navajo Rules of Civil Procedure applies to the Commission, and that this Court must enforce that rule by enjoining the Commission from hearing the cases. Petitioners argue that the State of Atizona would be financially affected by any monetary judgments the Commission might issue; its interests therefore must be protected by including it as a party in the cases. As the State of Arizona allegedly has sovereign immunity from Commission actions, which the State will not waive to allow it to be joined in these cases, the Commission cannot hear the cases at all.
Even assuming the State of Arizona was immune, and could not be joined, according to its own position in this case it is not an indispensable party. See State of Arizona’s Amicus Brief at 2-13. The State’s amicus brief disclaims any financial responsibility for judgments against Petitioners, and argues it is not indispensable to the cases before the Commission. It would be odd for this Court to disagree with the very party Petitioners allege is indispensable. The Court holds that even if the Commission cannot hear a case if an indispensable party cannot be joined, the State of Arizona is not indispensable, and the Court will not require the Commission to dismiss the cases on that ground.
Vi
Petitioners next argue that Real Parties consented to the application of Arizona law in their employment contracts, and therefore waived application of the NPEA. Real Party Yellowhair’s contract states that the agreement is “governed by the laws of the State of Arizona and exclusively in its courts.” Contract, Petition of Red Mesa Sehool District, Exhibit B, IXVII. The other Real Parties’ contracts state that the employee agrees to “abide by the applicable laws of the State of Arizona.” Contracts, Petition of Cedar Unified School Dist., Exhibits B, C, and D. According to Petitioners, Real Parties consented to Arizona jurisdiction, and the Commission and this Court must abide by that consent.[10]
*586 The Court holds that the NPEA prohibits employees and employers from waiving the act by contract, and therefore the choice of law clauses are invalid. Navajo law recognizes the importance of contracts, and this Court applies the principle that words are sacred and never frivolous. See Smith v. Navajo Nation Dept. of Headstart, 6 Am. Tribal Law 683, 686, 2005 WL 6235868, *2 (Nav.Sup.Ct.2005); Bailon, 5 Am. Tribal Law 412, 415-16, 2004 WL 5658164, *3. However, certain types of promises in contracts are unenforceable, because they are specifically prohibited by law or are in violation of Navajo public policy. Allstate v. Blackgoat, 6 Am. Tribal Law 637, 642, 2005 WL 6235869, *4 (Nav.Sup.Ct.2005). The NPEA states that
all transaction documents, including without limitation ... contracts ... which are entered into by or issued to any employer and which are to be performed within the territorial jurisdiction of the Navajo Nation shall contain a provision pursuant to which the employer and any other contracting party affirmatively agree to strictly abide by all requirements of this Act. With respect to any transaction document which does not contain the foregoing provision, the terms and conditions and provisions of this Act are incorporated therein as a matter of law, and the requirements of the Act shall constitute affirmative contractual obligations of the contracting parties ... To the extent of any inconsistency or conflict between a transaction document and the Act, the provision of the transaction document in question shall be legally invalid and unenforceable and the Act shall prevail and govern the subject of the inconsistency or conflict.
15 N.N.C. § 609(A) (2005). Section 609(A) clearly prohibits any attempt to waive or circumvent the NPEA. The contracts mandate the application of Arizona law, and by implication waives Navajo law, including the NPEA. That mandate is inconsistent with Section 609(A)’s requirement that the NPEA apply to all contracts. That section clearly states that any inconsistent provision in a contract is invalid and unenforceable. The choice of law clauses are therefore invalid, and this Court will not enforce them.
VII
Petitioners next argue that they cannot follow the NPEA because they would be violating federal law. Put another way, Petitioners contend that federal law preempts the NPEA. Petitioners cite the Ninth Circuit Court of Appeals’ opinion in Dawavendewa v. Salt River Project Agricultural and Power District for the proposition that Title VII of the Civil Rights Act prohibits application of the NPEA because the NPEA requires discrimination based on “national origin.” See 154 F.3d 1117, 1124 (1998); 42 U.S.C. § 2000e-2(a), (b) (2000) (prohibiting employment discrimination based on “national origin”).
The Court holds that Title VII has no effect on the NPEA’s “just cause” requirement, and therefore does not prohibit Commission review of Real Parties’ claims, even if Dawavendewa was binding. Da-wavendewa concerned the preference in hiring provisions of the NPEA, and the Ninth Circuit held that a private employer could not hire a Navajo over a Hopi under Navajo preference without violating Title VIPs prohibition on “national origin” discrimination. See 154 F.3d at 1124. Whatever the effect of that decision on Navajo *587 preference,[11] it has nothing to do with this case. Real Parties’ claims only concern whether Petitioners provided “just eause” when terminating them, a protection in the NPEA that applies to all employees within the Nation, regardless of race or “national origin.” See Thinn v. Navajo Generating Station, Salt River Project, 7 Am. Tribal Law 558, 564, n. 1, 2007 WL 5601033, *4; Milligan v. Navajo Tribal Utility Authority, 6 Am. Tribal Law 731, 732, 2006 WL 6169000, *1 (Nav.Sup.Ct.2006) (non-Indian protected by “just cause” provision of NPEA); Staff Relief, Inc. v. Polacca, 2 Am. Tribal Law 512, 515-16, 2000 WL 35732587, **2-3 (Nav.Sup.Ct.2000) (equal protection clause of Navajo Bill of Rights requires non-Navajos to be protected under NPEA). Petitioners do not discriminate against anyone in appearing before the Commission to defend their actions, and Title VII is therefore not implicated, regardless of whether providing tribal preference is “national origin” discrimination.[12] Under the circumstances of this case, Title VII does not preempt the NPEA and Petitioners do not violate Title VII by defending their actions before the Commission.
VIII
Petitioners finally ask this Court to defer to Arizona law as a matter of comity between the Navajo Nation and the State of Arizona. Comity means that the Nation should defer to another sovereign’s laws or decisions unless a strong Navajo policy justifies rejection. Bradley, 7 Am. Tribal Law at 500, 502-03, 2007 WL 5886718, **1-2. This Court recently granted comity to an Arizona unemployment tribunal decision and emphasized the important relationship between the State of Arizona and the Nation in the unemployment context. See id. at 503-04, 2007 WL 5886718, **2-3. The Court noted that the Nation has no unemployment system of its own, and instead uses the Arizona system. Id, In that situation, the Court held that it was appropriate to grant comity and recognize an unemployment tribunal decision. Id,
The current situation is different. The clear mandate of the Council to apply the NPEA in all situations not explicitly exempted precludes this Court from deferring to Arizona law. The Council is ultimately the policy-making body of the Nation, Tso v. Navajo Housing Authority, 5 Am. Tribal Law 438, 443 n. 1, 2004 WL 5658576, **2-3 n. 1 (Nav.Sup.Ct.2004), and, as discussed above, Section 609(A) of the NPEA clearly requires the application of the Act to Petitioners. This Court cannot grant an exemption the Council has not provided. See Silentman v. Pittsburg and Midway Coal Mining Co., 4 Am. Tribal Law 644, 649-50, 2003 WL 25794133, **4-5 (Nav.Sup.Ct.2003).[13]
IX
Based on the above, the Court DENIES Petitioners’ requests for writs of prohibi *588 tion. The Commission may proceed to hear the cases. Let the parties and amici be clear on this Court’s decision. The Court makes no comment on the appropriateness of the terminations in this case. The Court only holds that the Commission may hear Real Parties’ claims. Whether there was “just cause” to terminate Real Parties is for the Commission to decide, and Petitioners may appeal any adverse decision to this Court.

. Petitioner Red Mesa alleges that the Chinle Unified School District assigned its lease to Red Mesa. It did not attach a written assignment or approved lease to its petition.

. The Arizona School Risk Retention Trust is a not-for-profit corporation whose shareholders are Arizona school districts. The Trust insures districts, including Petitioners and several other districts on the Nation, through premiums paid into a common pool.

. At that hearing, the Court ruled on a preliminary matter presented by Real Party Yellow-hair. The Court ruled that the Court had jurisdiction to issue a writ of prohibition against the Commission. The Court specif!-. cally concluded that the Court has authority under 7 N.N.C. Section 303(A), the necessary and proper clause, to issue writs against administrative agencies when the Court has appellate jurisdiction over them. See Budget Finance Committee of the Navajo Nation Council v. Navajo Nation Office of Hearing and Appeals, 6 Am. Tribal Law 717, 719-20, 2006 WL 6168350, **2-3 (Nav.Sup.Ct.2006). In other words, the Court’s writ jurisdiction is co-extensive with the Court’s appellate jurisdiction, and the right to hear an appeal includes the right to intervene before a final judgment through an extraordinary writ when necessary and proper. Based on this ruling, the Court proceeded to hear arguments on the issues presented by Petitioners’ briefs.

. While it is clear that public school districts are political subdivisions of the state created pursuant to Arizona statutory laws, it is curious that Petitioners would characterize themselves as “non-Indian" entities. According to the representations of the parties, all but one of the school board members of the districts is a member of the Navajo Nation. This composition of the boards is natural because of the population in the districts. It is also the result of basic policies that the education of children is basically a parental responsibility, and that operation of schools is primarily vested in local communities through local governance. Thus, this characterization obscures the fact that in this case it is purported that Navajos on the school board wish to use Arizona state law to terminate fellow Navajos.

. In Dale Nicholson, the Court distinguished the United States Supreme Court’s opinion in Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). In Hicks the U.S. Supreme Court applied the Montana test to a tribe's attempted regulation of state officials on trust land, though previous opinions only applied that test to non-Indian owned fee land. See id. at 358, 121 S.Ct. 2304. In Dale Nicholson, this Court stated that the factual differences between the Fallon Paiute tribe and the Navajo Nation means that Hicks does not apply to the Nation. See 5 Am. Tribal Law 365, 371-72, 2004 WL 5658105, **6-7. Specifically, the Court noted that the Paiutes asserted no equivalent treaty right to exclude, and the U.S. Supreme Court therefore did not consider whether a treaty authorized jurisdiction over state officials on trust land regardless of the Montana test. Id. at 372, 2004 WL 5658105, *7. The Court further noted that in Montana itself the U.S. Supreme Court recognized the Crow Tribe's authority to regulate non-Indians on trust land because of an almost identical treaty provision recognizing that tribe's absolute right to exclude. Id. at 371-72, 2004 WL 5658105, **6-7; see also Montana, 450 U.S. at 558, 101 S.Ct. 1245.

. As mentioned above, there is a factual question whether Red Mesa School District is operating under a lease. It is not necessary to resolve that question, as regardless, the rule is that the Nation can regulate the district absent a waiver. Whether or not there is a lease, there is no waiver.

.As previously mentioned, after oral argument, the Court invited the parties and amici to respond to a ruling of the Tenth Circuit, Macarthur v. San Juan County, 497 F.3d 1057 (2007). In that case the Tenth Circuit held that the Nation lacked authority over a health clinic operated by a special service district of the State of Utah within the Nation, and stated that the Montana test applied on trust lands. Id. at 1069-70. As the schools in this case are located on the "Arizona side” of the Reservation, which is in the Ninth Circuit, Macarthur is not directly applicable, even if federal circuit court opinions were binding on this Court. See Thinn, 7 Am. Tribal Law at 565, 2007 WL 5601033, *5 (assuming for purposes of discussion that Ninth Circuit opinion is binding on Navajo courts). Regardless, Macarthur is distinguishable, as it did not consider the Treaty of 1868 as a source of authority over the state entity. Further, the land on which the clinic sits is fee land owned by the State of Utah, and not tribal trust land. Macarthur, 497 F.3d at 1061. The Tenth Circuit’s discussion of Montana in relation to trust lands is therefore not necessary to its decision. Id. at 1073-1074, and n. 9 and 10 (stating that court was making no opinion “regarding the ability of the tribes to exercise regulatory authority over States qua States *584 when the regulated activity occurs on Indian land"). It is then not binding even if the opinion otherwise controlled this Court's analysis. See Navajo Townsite Community Development Corp. v. Sorrell, 4 Am. Tribal Law 589, 592, 2002 WL 34461238, *2 (Nav.Sup.Ct.2002) (Court not: bound by dictum in prior opinions).

. Petitioners emphasize the Arizona statutory process they must follow when terminating an employee, and allege they cannot follow the NPEA in addition to that process. They cite no explicit provision barring the application of the NPEA; Petitioners assert the Arizona statutory process implicitly excludes other processes. There is no inherent inconsistency in allowing employees on the Nation two administrative processes when districts terminate them, as some employers, including the Branches of the Navajo Nation, provide grievance procedures separate from the NPEA process. See, e.g., Taylor v. Dilcon Community School, 6 Am. Tribal Law 689, 690-91, 2005 WL 6235953, *1, **2-3 (Nav.Sup.Ct.2005) (describing school district grievance process and its relationship with the NPEA process); Navajo Nation Personnel Policies Manual, § XIV (describing grievance rights that include appeal to Office of Hearings and Appeals); Judicial Branch of the Navajo Nation Personnel Rules, Rule 32 (grievance process for judicial employees). Further, this Court recognizes judgments from Arizona administrative tribunals under certain circumstances, and applies them in NPEA proceedings. See Bradley v. Lake Powell Medical Center, 7 Am. Tribal Law 500, 503-04, 2007 WL 5886718, **2-3 (Nav.Sup.Ct.2007) (accepting Arizona unemployment tribunal decision as a matter of comity and applying it to NPEA proceeding). One issue not decided by this opinion is whether a decision under the state process that a district validly terminated an employee has res judicata effect over a later NPEA proceeding before the Commission. See Peabody Western Coal Co., Kayenta Mine v. Navajo Nation Labor Comm’n, 4 Am. Tribal Law 650, 652-53, 2003 WL 25794132, *2 (Nav.Sup.Ct.2003) (arbitration decision under collective bargaining agreement bars Commission proceeding under NPEA); Bradley, 7 Am. Tribal Law at 508-09, 2007 WL 5886718, *6 (concluding Arizona unemployment tribunal *585 decision does not bar Commission proceeding).

. Petitioners also assume that failure to join an indispensable party is a jurisdictional defect that allows the Court to issue a writ of prohibition. See Peabody Western Coal Co., Kayenta Mine v. Navajo Nation Labor Comm'n, 5 Am. Tribal Law 406, 407, 2004 WL 5658111, *1 (Nav.Sup.Ct.2004) (stating that writs of prohibition are only appropriate for issues of "jurisdictional significance”). The Court assumes the same for purposes of this discussion.

. The Court assumes for purposes of this discussion that Real Parties affirmatively consented to Arizona jurisdiction, and had the option not to agree to that provision. If the facts were that Real Parties had no ability to negotiate a change to that provision, the Court would have to decide whether nonnegotiable provisions that mandate non-Navajo law could ever be valid under Navajo public policy. See Smith v. Navajo Head Start, 6 Am. Tribal Law 683, 686, 2005 WL 6235868, *2 (Nav,Sup.Ct.2005) (contractual provisions *586 are invalid if they violate Navajo public policy).

. The Ninth Circuit ultimately dismissed the Dawavendewa case for failure to join the Navajo Nation, which it held to be an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. See Dawavendewa v. Salt River Agr. Imp. and Power Dist., 276 F.3d 1150, 1163 (2002).

. The Court makes no comment on whether tribal affiliation is “national origin” for purposes of Title VII.

. Importantly, the Council has provided one exception for schools. Under Title 10, school boards may waive Navajo preference on a case-by-case basis if they meet certain requirements. 10 N.N.C. § 124(C) (as amended by Navajo Nation Council Resolution No. CJY-37-05). That exception is not applicable to the facts of this case.