OPINION

This case concerns a jurisdictional challenge by Ford Motor Company. The Court holds that the Navajo Nation courts have authority to hear a claim against a motor vehicle manufacturer alleging that a vehicle defect resulted in the death of a Navajo police officer on a road located on trust land within the Navajo Reservation.
I
The relevant facts are as follows. A Navajo Nation police officer, Esther Tode-cheene, died from injuries when she was ejected as her police vehicle overturned on a dirt road located on trust land within the Utah portion of the Navajo Reservation. The vehicle was manufactured by Petition *655 er Ford Motor Company (Ford), and was purchased by the Navajo Nation through Gurley Motor Company of Gallup, New Mexico, a Ford dealer located off the Reservation. The Nation purchased the vehicle as part of a larger purchase of about 360 vehicles from Gurley. The fleet purchase via a secured transaction was financed by Ford Motor Credit Company, a subsidiary of Ford. Ford Motor Credit financed the purchase as a tax-exempt transaction with a sovereign Indian nation under the Indian Tribal Government Tax Status Act of 1986. See 26 U.S.C. § 7701. An amendment to the purchase agreement states that the Nation certified that the vehicles would be used “only in the exercise of essential government functions by the Nation” as defined by the Act. Agreement, Amendment Section 7, Exhibit D to Affidavit of Francesca Walter, Operations Services Coordinator, Ford Motor Credit, Exhibit 3 in support of Petition for Writ of Prohibition.
The case has taken a long, tortuous path to this Court. Real Parties in Interest Joe and Mary Todecheene, parents of Esther Todecheene, filed a wrongful death claim in the Tuba City District Court in April, 2000. In the complaint they alleged that a defective seat belt caused their daughter’s death, and sought damages from Ford as the manufacturer of the vehicle. The case was transferred to Kayenta District Court (District Court). Ford moved to dismiss the case from the District Court, arguing that the suit was not within the court’s jurisdiction under United States Supreme Court precedent defining the scope of tribal jurisdiction over non-Indians under federal Indian law. The District Court ruled it had jurisdiction. Instead of seeking review by this Court, Ford filed an action in the federal district court of Arizona to enjoin the Navajo Nation courts from hearing the case. The federal district court ruled there was no jurisdiction. Applying the test in the United States Supreme Court’s opinion in Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the, Arizona federal district court held that pursuant to Montana, Indian nations lack civil jurisdiction over non-Indians unless one of two exceptions is met. The court concluded that neither of the Montana exceptions were met. On appeal, the Ninth Circuit initially affirmed the federal district court decision. However, the Ninth Circuit later vacated that ruling upon a petition for rehearing filed by the Real Parties in Interest and Navajo Nation, and required Ford to seek review by the Navajo Supreme Court on one issue: whether the Navajo Nation could assert jurisdiction under the second Montana, exception, which recognizes Indian nation jurisdiction if the conduct of the non-Indian “threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Id. at 566, 101 S.Ct. 1245.
Consistent with the Ninth Circuit’s instructions, Ford filed this petition for a writ of prohibition with this Court, Following the filing of the writ, this Court posed an additional question to the parties in keeping with its own precedents. Namely, whether the Treaty of 1868 (Treaty between the Navajo Tribe of Indians and the United States of America, 15 Stat. 667) provides an independent ground for the Nation’s courts to hear the case under the right of inherent sovereignty. The Navajo Nation Department of Justice and Susan Rose, a private attorney, filed ami-cus briefs on these issues.
While Ford’s Petition was pending here, the United States Supreme Court heard another case on the civil jurisdiction of Indian nation courts over non-Indians, Plains Commerce Bank v. Long Family Land & Cattle Co., — U.S. ——, 128 *656 S.Ct. 2709, 171 L.Ed.2d 457 (2008) (Plains Commerce). With the concurrence of all the parties, this Court stayed consideration of the Petition until the United States Supreme Court issued its opinion in Plains Commerce. Once the opinion in Plains Commerce was issued, this Court invited supplemental briefs on the effect, if any, of the Plains Commerce opinion. Ford and Amicus Susan Rose filed briefs on the effect of Plains Commerce. The Court held oral argument at the Sandra Day O’Connor School of Law at Arizona State University on September 18, 2008.
II
The issues in this case are (1) whether pursuant to Article II of the Treaty of 1868 (Treaty), Navajo courts have subject matter jurisdiction over a liability claim filed by a tribal member against the nonmember manufacturer of an allegedly defective vehicle that caused the death of a Navajo Nation police officer on a dirt road on trust land within the Nation, where said vehicle was financed for sale to the Navajo Nation by a subsidiary of the manufacturer specifically for use by Navajo police officers to patrol all roads within the Navajo Nation; and (2) whether Montana v. United States applies and authorizes such jurisdiction under the same factual circumstances.
III
The Navajo Nation retains civil jurisdiction over claims arising within the Nation by inherent sovereignty under Article II of the Treaty. To the Navajo, the Treaty is the organic law. It is the old law made at Fort Sumner by our ancestors following years of captivity to secure the Nation’s prosperity. Hwéeldidi Bee-haz’áanii Semi Nihizázíui’ uee'niji’ bee hoot'ih dooleel yiniyé nihá áyiilaaígíi. This is why the Treaty is considered a sacred document. This Court cannot ignore this law which embodies Naayéé’ yee ak’ ehdeesdlfy’go Hózhqqjíí yee ak’idhjaa süñ’ (they overcome adversity through Protective Way to restore peace and harmony) between our ancestors and the United States. This Court’s precedents have emphasized the Treaty as the primary source of the Nation’s authority over non-Indians within the Nation. See Cedar Unified School Dist. v. Navajo Nation Labor Commit, 2007 WL 5909897, **2-3, 7 Am. Tribal Law 579, 582-85 (Nav.Sup.Ct. 2007) (employment regulation of state-organized school districts); Thinn v. Navajo Generating Station, 2007 WL 5601033, *2, 7 Am. Tribal Law 558, 561 (Nav.Sup.Ct. 2007) (employment regulation of non-Indian operated power plant); In the Matter of A.P., 8 Nav. R. 671 (Nav.Sup.Ct.2005) (juvenile delinquency jurisdiction over non-Indian minor); Dale Nicholson Trust v. Chavez, 8 Nav. R. 417, 5 Am. Tribal Law 365 (Nav.Sup.Ct.2004) (regulation of state tax officials’ seizure of non-Indian property). Although the Ninth Circuit did not address the Treaty in considering the jurisdictional question before it, this Court is obliged to do so.
Ford makes several arguments against the applicability of the Treaty in this case. Ford first argues the Treaty issue is not properly before this Court because no one asserted the Treaty as a source of jurisdiction before the District Court, the federal district court or the Ninth Circuit. Further, the Ninth Circuit instructed Ford to assert only the second exception to Montana before this Court, and not the Treaty. Ford also argues that the Treaty power only applies to the area of the Navajo Reservation as defined within Article II of the Treaty, and not to any later additions to the Nation’s territory, such as the area in Utah where the accident occurred. Fi *657 nally, Ford argues that United States Supreme Court easelaw, including the recent opinion in Plains Commerce Bank, denies jurisdiction under the Treaty in these factual circumstance and this Court should overrule its precedents that state otherwise.[1]
This Court rejects Ford’s arguments. While it is true that the parties did not raise the Treaty before other courts in this case, this Court is not bound by that lack of discussion. Subject matter jurisdiction may be raised at any time, and the Court itself may present the issue. See Budget and Finance Committee v. Navajo Nation Office of Hearings and Appeals, 6 Am. Tribal Law 717, 719-20, 2006 WL 6168350, *2 (Nav.Sup.Ct.2006); In the Matter of A.P., supra at 78; Dale Nicholson Trust, supra, at 424, 5 Am. Tribal Law 365. This includes the authority to raise jurisdictional arguments not presented by the parties. See id.[2] This Court follows Navajo law, and its recent precedents emphasize the Treaty as a source of law to define the Navajo courts’ authority. The Court cannot ignore those precedents in considering the scope of jurisdiction in this case.
As we stated in Dale Nicholson Trust, Article II specifically recognizes the Navajo Nation’s authority to regulate all non-members other than certain federal employees on its lands. Dale Nicholson Trust, supra, at 428, 5 Am. Tribal Law 365. When the President of the United States through executive order, or Congress through statute, expanded the Navajo Reservation, our leaders understood at the time and understand today that their Treaty-recognized authority extends to that land. As with other extensions, the Reservation was extended through Executive Order of May 17, 1884 into the portion of Utah on which this claim arose by the federal government with neither conditions nor limitations on the Nation’s authority over that extension. The Nation’s Article II authority is no different whether on the original Reservation or later extensions.
Finally, United States Supreme Court easelaw by no means denies jurisdiction under the Treaty in these factual circumstances. Montana and its progeny address private non-member actors and matters that neither implicate the public welfare of the Nation nor involve constant movement by a public tribal official between trust and non-trust lands in performance of public safety duties. This case concerns the death of a Navajo Nation police officer during the performance of patrol duties caused by an allegedly defective official vehicle driven by the officer on roads traversing both trust and non-trust lands within the Nation. The *658 claim has been brought by the family of the deceased officer against a non-member manufacturer who also financed the sale of this and 360 like vehicles to the Navajo government through its subsidiary. No case law in the United States Supreme Court has previously addressed jurisdiction in such factual circumstances. Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) called for the application of Montaría where a claim involving nonmembers occurred on a public road within the reservation boundaries over which a tribe had neither exclusive nor concurrent control over maintenance or operation of vehicles on that road by authorizing treaty or statute. Strate at 445-459, 117 S.Ct. 1404. In this ease, the public road was a dirt road patrolled and controlled by Navajo Nation police pursuant to Navajo Nation treaty powers. Montana itself involved the sources and scope of the power of an Indian tribe to regulate hunting and fishing on by nonmembers of the tribe on non-Indian property within reservation boundaries, and is not on point. Plains Commerce addresses the sale of non-tribal land between non-members and is distinguished from this case.
The Treaty basis for tribal court jurisdiction has been upheld by the United States Supreme Court in Montana which held that the Crow Tribe had jurisdiction to regulate non-Indians on tribal trust land because of a similar treaty with the United States. See Montana v. United States, 450 U.S. 544, 558, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); see also Atkinson Trading Co. v. Shirley, 532 U.S. 645, 650, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001) (reiterating Montana’s recognition of Treaty regulatory authority); South Dakota v. Bourland, 508 U.S. 679, 687-88, 113 S.Ct. 2309, 124 L.Ed.2d 606 (recognizing same authority under 1868 Treaty of Fort Laramie for Sioux Nation). No subsequent opinion has changed that, as neither Hicks nor Plains Commerce considered whether a treaty provision separately justified authority over non-Indians. The Court will not overrule its precedents on the Treaty.
 The Navajo courts have subject matter jurisdiction over this action under Article II of the Treaty. The only issue in this case is whether Ford can be said to be “present” within the Nation to invoke the Nation’s Treaty authority. Under the circumstances, an applicable test for Ford’s presence is the “minimum contacts” requirements of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts test was used by the 9th Circuit in Hinshaw v. Mahler, 42 F.3d 1178 (1994) in finding tribal court jurisdiction in a suit brought by a member against a non-member for a claim arising on a reservation public road. While Strate overruled other portions of Hinshaw and narrowed tribal jurisdiction on public roads to only those roads which a tribe maintains or controls operation of vehicles pursuant to treaty or statute, the public road in question in this matter is a dirt road patrolled by the Nation’s police. Hinshaw continues to be good law in the 9th Circuit concerning public roads such as in this case. The International Shoe opinion has been used for the past 50 years to help establish the circumstances under which a person or corporation comes under the jurisdiction of forum that is not of primary residence. This Court may choose to apply a variation of the minimum contacts test of International Shoe.
To the extent that a corporation enjoys the privilege of conducting business with a tribe, it should also expect to be brought before a tribal court for claims arising from that business activity. Here, *659 Ford’s presence is not based on a lease with the Nation, and no representatives of Ford are or have been physically within the Reservation. Instead, Ford’s products have entered the Nation through financing by a Ford subsidiary and purchase from a Ford Dealership.
Under the circumstances, the Court holds that Ford is present through its vehicles that entered the Nation’s territory. Ford actively participated in the sale and financing of the vehicles to the Navajo Nation government through a Ford dealer and Ford financing subsidiary. Ford had full knowledge that the vehicles were intended for the specific use of tribal officials performing official tribal activities. This Court has previously recognized inherent jurisdiction over a products liability claim when a diabetes drug entered the Nation through prescription, provision and/or ingestion within Nation. Cf. Nelson v. Pfizer, 8 Nav. R. 369, 373 (Nav.Sup.Ct.2003). That one of those police vehicles crashed while performing official duties on a dirt road on trust land[4] within the Nation is enough to invoke the Nation’s absolute civil jurisdiction under the Treaty. It is for these types of cases that the Navajo Nation Council enacted the Navajo Long-Arm Civil Jurisdiction and Service of Process Act, 7 N.N.C. § 253a.[5]
It is noted that state official activity on tribal land was given special treatment by the United States Supreme Court in Nevada v. Hicks, whei'e the Court applied Montana in spite of the claim arising on tribal land. The Court limited its holding “to the question of tribal court jurisdiction over state officials enforcing state law”. Hicks, 533 U.S. 353, 358 n. 2, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). Here, we have a manufacturer-financer of an allegedly defective product sold and financed to tribal officials with a fatal consequence that could well have occurred on or off trust land during patrol duties. The protection of the lives of tribal officials performing tribal duties in tribal vehicles deserves no less special treatment by Navajo courts.
IV
The Court finds that Montana does not apply in this case. However, even under Montana and its exceptions, the Nation has jurisdiction over this case.
This Court believes that both Montana exceptions are met.
A.
The Court finds that the first Montana, exception is met. Ford, through its finance subsidiary Ford Motor Credit, established a “consensual relationship” *660 with the Navajo Nation upon sale and financing of over 300 vehicles to the Navajo Nation government for official use. This was a significant transaction with a sovereign Indian nation. Ford benefited both from the purchase and financing. In addition, Ford Motor Credit structured the transaction as a tax-exempt purchase by an Indian nation and required the Nation to certify that the vehicles would only be used for “essential governmental functions,” as defined by the Indian Tribal Government Tax Status Act (Act). The Act authorizes Indian nations to be treated as state governments for purposes of federal tax exemptions if the nation engages in an “essential governmental function.” See 26 U.S.C. § 7871. We have here not merely a product entering the stream of commerce and incidentally being present within the Nation. The product was sold directly to the Nation and was foreseen to be put to government use primarily on reservation roads.
In addition, Section 24 of the amended financing agreement states that the transaction “will be governed by Navajo substantive and procedural law.... All actions which arise out of this Lease or out of the transaction it represents shall be brought in the courts of the Navajo Nation.” The Court holds that this explicit language further establishes a consensual relationship under Montana between Ford Motor Company and the Navajo Nation, through its finance subsidiary, Ford Motor Credit.
B
The second Montana exception is met where the conduct of the non-Indian “threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Montana, 450 U.S. at 566, 101 S.Ct. 1245. Since Montana the U,S. Supreme Court has narrowed the exception, stating that the assertion of Indian nation jurisdiction must be “necessary to protect tribal self-government and control internal relations.” Atkinson Trading Post, supra at 658, 121 S.Ct. 1825. In Plains Commerce, the Indian Nation must now show some “catastrophic” effect on its existence to justify its civil authority over a nonmember. 128 S.Ct. at 2726-27. The U.S. Supreme Court did not explain “catastrophic effect.”
Navajo Nation police officers depend on their official vehicles to perform patrol and police duties across 26,110 square miles of the Nation. Our officers are severely understaffed and underpaid. Serving a reservation population of 165,614, our police officer to population ratio is 0.8:1,000, compared with the recommended United States average ratio of 2.5:1,000. The patrol work in the largely rural high desert is lonely, difficult and thankless. It is extremely difficult to attract and maintain police officers under these circumstances. It will be impossible to recruit and keep police officers if the Navajo Nation government is powerless to prevent defective vehicles from being purchased for their use, and powerless to process claims through our courts for police fatalities caused by defective vehicles. The effect on public safety and government morale would be “catastrophic” were jurisdiction over such claims to be denied the Navajo courts.
Evidently, the death of a police officer in the isolated remoteness of the reservation that is caused by a defective official vehicle threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe in numerous ways. It threatens the functioning of Navajo Public Safety; public confidence in our police officers and Navajo Nation government; the public welfare of the Navajo people who rely on the isolated patrols of Navajo police; the recruitment *661 and retention of Navajo police officers; the ability of Navajo Nation government to provide protection to its law enforcement officials in the field and to the public; and so on.
Navajos live daily with the tension between Navajo law and the laws of the United States government. Over the past twenty years, the United States Supreme Court has handed a series of decisions that erode tribal sovereignty as traditional principles of judicial interpretation of treaty rights are continually revised. The evolving judicial standard results in an unwarranted abrogation of settled treaty rights, especially treaty rights to regulate.
More, not less, rights to regulate are needed, particularly with respect to tribal law enforcement. Congress itself has taken notice that crime levels on Indian reservations have reached epidemic proportions. Studies predict that more than one in three Native American women will be raped in their lifetimes, and two in five will be victims of physical abuse. Drug traffickers are targeting Indian Reservations as safe havens because of the lack of police presence and the disjointed system of justice that is in place.[6] The case at hand involves the tribal sovereign right to protect Navajo law enforcement in the performance of their duties, which by necessity covers highways and notoriously dangerous dirt roads on and off trust lands to reach remote populations quickly and efficiently in dependable vehicles. The right to provide an avenue for accountability and redress in our tribal courts when equipment supplied to our government for tribal law enforcement use is defective goes to the very heart of our Nation’s self-governance.
This Court finds that the second Montana exception is met.
V
Based on the above, the Court DENIES the request lor a writ of prohibition.

. In response to a direct question from the Court at oral arguments, Ford's counsel informed the Court that Ford wasn't asking the Court to overrule Nelson v. Pfizer, 8 Nav. 369, 4 Am. Tribal Law 680 (Nav.Sup.Ct.2003) because in Pfizer the drug company was clearly "present” in the Navajo Nation, whereas in this case, Ford is not present because it sold the Expedition to the dealer.

. The Court notes that the United States Supreme Court raised and analyzed Montana's second exception in Plains Commerce, though no federal court below considered it. See 128 S.Ct. at 2726. That Court has raised its own arguments in other Indian sovereignty cases as well. See, e.g., City of Sherrill v. Oneida Indian Nation of New York, 544 U.S. 197, 214 n. 8, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005) (raising equitable defenses not argued in parties’ briefs, stating that such defenses were “fairly concluded" within questions presented to the Court). 3 The other party to this Treaty has also opined and treated executive order reservations the same as the land reserved by treaty. See 34 Op. A.G. 181, 186-189 (1924) and see also Cohen’s Handbook of Federal Indian Law § 15.04[3][c][4] (Nell Jessup ed., 2005 ed.).

. It is noteworthy that the particular dirt road where the accident and death occurred is a reservation road that is not identified as a federal or state right-of-way and the parties, as the federal district court noted, do not contest the characterization of the reservation road. Thus Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (Tribes lacked jurisdiction where an accident occurred on a public highway maintained by the State pursuant to a federally granted right-of-way over Indian reservation land), would not apply in this case.

. The Court notes the federal district court, in its vacated decision, disregarded the Navajo Long-Arm Civil Jurisdiction Act, 7 N.N.C. 253(a)(c)(4), noting that it was enacted after the commencement of this case and the retroactive application was not discussed by the parties. This Court affirms the Navajo District Court’s application of this statute. The Court takes judicial notice that the Long Arm Civil Jurisdiction and Service of Process Act enacted in 2001 does not establish Navajo civil jurisdiction over non-members. The Act codified the inherent authority of the Navajo Nation as affirmed in Article II of the Treaty of 1868. As such, the Act clarified the modern application of this authority.

. June 23, 2008 Press Release on the proposed Tribal Law and Order bill, Congressional Committee on Indian Affairs.