*206 This matter is before the Court pursuant to its Order for Supplemental Briefing Concerning Attorney's Fees and Costs on June 18, 2010. Previously, we issued our Opinion on May 28, 2010 affirming the summary dismissal of the Office of Hearings and Appeals. We reserved the question of award of attorney fees to amicus Eddie Arthur and further reserved a question posed by amicus Hada’a sidi regarding the legality of the Navajo Nation Council’s $150,000 appropriation to fund Appellant’s grievance and appeal pursuant to Intergovernmental Relations Committee Resolution, IGRD-2Jf8-09 (December 28, 2009) (Litigation Fund). The two questions are related, as any award of fees to Mr. Arthur would come from Appellant’s litigation fund. Following our Order for Supplemental Briefing, supplemental briefs were timely received from the parties and all amicus curiae except amicus pro se Jack Whitehorse, Jr. Oral argument was held on September 29, 2010 at the Fort Defiance Chapter House in Fort Defiance with the parties and all amici present.
Issues of jurisdiction and other preliminary matters having been raised, we first issue this Order and Opinion Denying Jurisdictional Challenge. Our opinion regarding the Litigation Fund and attorney fees will follow once all documentation needed for a fully informed decision is received.
I.
ISSUES
(a)Whether new information provided to the Court require that the role of Council Delegates Ernest Yazzie, Leonard Chee, and Lee Jack (Three Delegates) be changed for the record;
(b) Whether jurisdiction over the legitimacy of the Litigation Fund and attorney fees is proper;
(c) Whether a March 30, 2005 Memorandum from Chief Legislative Counsel Frank Seanez to Leonard Chee, Chairman of the Education Committee, is admissible.
II.
ROLE OF THREE DELEGATES
At oral argument, Chief Legislative Counsel Mr. Frank Seanez, acting as counsel for Amici Council Delegates Ernest Yazzie, Leonard Chee, and Lee Jack (Three Delegates), informed the Court that Three Delegates were amici as private citizen voters. However, they are identified in their brief as “Delegates to the Navajo Nation Council, and registered voters.” Amiri Three Delegates’ supplemental amicus curiae brief, p. 1. Mr. Seanez further informed the Court that “IGR (the Intergovernmental Relations Committee) directed that I prepare an amicus brief in this matter.” Finally, Mr. Seanez stated that he provided copies of his amici filings to the entire Navajo Nation Council.
This new information bears on the Three Delegates’ participation as amici, as this phase of the appeal directly addresses governmental action taken by the Council. The IGR directive to Mr. Seanez shows formal Council involvement. Three Delegates appear as Delegates of the Navajo Nation Council in their brief. As Mr. Seanez further provides copies of his filings to the entire Council in addition to the IGR directive, we HOLD that Mr. Seanez’ role will henceforth be defined for the record as counsel for the Navajo Nation Council in this appeal, and Three Dele *207 gates are representatives of the Council as a whole.
It is undisputed that the Office of the Speaker of the Navajo Nation Council is the source of the Litigation Fund. The documentation submitted to this Court shows that a grant agreement was entered between the Navajo Nation and Appellant’s counsel, Mr. Trebon; Mr. Trebon submits his invoices to, and is paid by the Navajo Nation; and there is no indication of any Attorney-Client Retainer Agreement entered between Mr. Trebon and Appellant. Any award of fees would come out of the Litigation Fund which is not in Appellant’s control. It is clear to this Court that the representation contract is directly between Mr. Trebon and the Council with Appellant as beneficiary.
The Rules of Civil Procedure of the Navajo Nation Courts provide that “[ejvery action shall be prosecuted in the name of the real party in interest” defined as including “a party with whom or in whose name a contract has been made for the benefit of another.” Nav. R. Civ. P., Rule 17(a). Under this definition, the Navajo Nation Council is real Real Party in Interest (RPI) for all intents and purposes in this phase of the litigation and the record will so reflect.
The Court is troubled that Mr. Seanez has insisted to this Court that he represents Three Delegates as private citizens while his own briefs indicates they appear as Delegates, additionally he was assigned to them pursuant to an IGR directive; and he provides copies of his filings to the entire Council. We caution Mr. Seanez that, as an Officer of the Court, he has an affirmative duty of candor to the tribunal. As Chief Legislative Counsel, he needs to be concerned with the truth.
It is HEREBY ORDERED that the Three Delegates are redesignated Real Parties in Interest (RPI). Any information that would assist this Court in reaching a different conclusion is to be submitted by Three Delegates by October 21, 2010.
III.
JURISDICTION
Three Delegates challenges this Court’s authority to address the issue of the legality of the Litigation Fund because the issue (1) was not raised below; and (2) was raised by amicus Hada’a sidi, not by the parties. They further challenge our authority to award attorneys fees.
We note that Three Delegates raised the challenges when they were themselves amici in this case. However, jurisdictional matters may be raised at any time and the Court itself may present the issue. See Ford Motor Company v. Kayenta District Court, and concerning Todecheene, No. SC-CV-33-07, 7 Am. Tribal Law 652, 657 (Nav.Sup.Ct. December 18, 2008) (cites omitted). We will fully address the jurisdictional challenges herein.
a. Issues Not Raised Below
Three Delegates argue that we are a Court of limited jurisdiction which may address neither the question of amicus attorney’s fees nor legitimacy of the appropriation for Appellant’s litigation because neither issue were raised below. They argue that we may only address issues raised below. As this is an appeal from an administrative election proceeding, both Title 7 and 11 are implicated.
The relevant provision in Title 7 is section 803 which states that “Appeals shall be limited to the issues of law raised in the record on appeal.” We read the provision as restricting what issues of law may be brought up on appeal by the parties, not *208 what may be raised, reviewed or otherwise discussed and disposed of by the Court.
Our courts have long applied the plain meaning of section 803. We have stated that issues not raised below are not appealable, Gudac v. Marianito, 1 Nav. R. 385, 394 (Nav.Ct.App.1978), and failure to object to matters raised in a lower court will constitute a waiver of any right to review on appeal, Navajo Nation v. Bedonie, 2 Nav. R. 131 (Nav.Ct.App.1979) However, we reserve the right to present jurisdictional issues not previously raised, see Ford Motor Company v. Kayenta District Court, and concerning Todecheene, No. SC-CV-33-07, 7 Am. Tribal Law 652, 647 (Nav.Sup.Ct. December 18, 2008) (numerous cites omitted), and further reserve discretion to award attorney’s fees on appeal, including convening hearings on the award and collect invoices and other relevant evidence, In re Custody of C.L.M. and AM., 7 Nav. R. 130, 134 (Nav.Sup.Ct.1995). Otherwise, we have long reserved the right to raise legal issues not raised by the parties. In Brown v. Todacheeney, 7 Nav. R. 37, 42 (Nav.Sup.Ct.1992), we raised the issue of how a trial court must approach voiding mortgage agreements, stating:
Generally, this Court does not address issues not raised by the parties to an appeal. In this case, however, considerations of policy and, justice strongly favor that we raise the issue on our own.
Id., also cited in Barton v. Navajo Nation Ethics and, Rules Office ex rel. Harrison, 8 Nav. R. 353, n. 5, 4 Am. Tribal Law 676 (Nav.Sup.Ct.2003). (emphasis added)
As a further example, in Wood v. Window Rock District Court, No. SC-CV-20-09, 8 Am. Tribal Law 252 (Nav.Sup.Ct. 2009), we raised an additional issue of whether inaction by the District Court constituted cruel and unusual punishment contrary to the Navajo Bill of Rights or any other Navajo law.
Title 7 “shall be so construed as to effectuate its general purposes and in such a manner as to assure judicial independence, the right of access to fair and independent remedies, the observance of Dine hi beeaa-haz’áanii, and the protection of the rights guaranteed by the Navajo Nation Bill of Rights.” 7 N.N.C. § 851. The plain wording of 7 N.N.C. § 803 and our caselaw shows that our jurisdiction is calculated to ensure justice, strengthen our ability to enforce and apply the law as strong and independent courts. Under the Judicial Reform Act, we are obliged to maintain our strength and independence “if the Navajo Nation is to continue as a sovereign Nation and to move forward toward the reality of a three branch form of government.” Navajo Nation Council Resolution No. CD-94-85, Enacting the Judicial Reform Act of 1985, Whereas Clause 9. We have a duty to hear cases on appeal “based on law, equity and tradition.” Id,., Whereas Clause 13. Finally, we will have final appellate jurisdiction. Id., Whereas Clause 13 and 7 N.N.C. § 302.
Judicial review by tribal courts of Council resolutions is mandated by the Indian Civil Rights Act, 25 U.S.C. § 1302. Halona v. MacDonald, 1 Nav. R. 189 (Nav.Ct.App.1978). We have stated that “there is a Navajo higher law in fundamental customs and traditions, as well as substantive rights found in the Treaty of 1868, the Navajo Nation Bill of Rights, the Judicial Reform Act of 1985, and the Title Two Amendments of 1989. The power of judicial review flows from these principles and documents, and they set the boundaries for permissible action by the legislative, executive, and judicial branches of the Navajo Nation.” Shirley v. Morgan, No. SC-CV-02-10, 9 Am. Tribal Law 46, 60 (Nav. Sup.Ct. May 28, 2010). We are not prohibited from judicial review of resolutions simply because issues were not raised be *209 low. We note that the power of judicial review is part of the scheme of checks and balances that are part of our organic laws, which we have said, may only be amended by the People.
11 N.N.C. § 408(F) and § 341(A) also apply. Both provisions state that “[t]he scope of review (of the decision of the Office of Hearings and Appeals) is limited to whether the Office of Hearings and Appeals’ decision is sustained by sufficient evidence on the record.” The plain wording of the provisions is clear. In this case, we strictly applied the statutorily-conferred scope of review in affirming OHA’s summary dismissal on the basis of the record evidence. However, we read the provision as placing no restriction on the settled discretion of this Court to address additional post-review legal questions and issues that impact the subject matter but are separate from review of the OHA’s decision.
This case has involved several years of litigation under different docket numbers. It is by any measure unusual, a case significant to the public welfare, and highly contentious between governmental entities. When we affirmed the dismissal, issues of paramount significance to the Navajo People remained unaddressed for which a fresh grievance could not be filed under Title 11 provisions. Ná bináhaazláo requires this Court to do its best to achieve issue comprehensiveness and finality. The federal courts also favor this approach.[2] We formulated a test for eomprehensiveness in Shirley v. Morgan, No. SC-CV-02-10, 9 Am. Tribal Law 46, 67-68 (Nav.Sup.Ct. May 28, 2010), and applied it in this case.
On the issue of an award of fees, there is no doubt that fees may not be recovered as a statutory right because Title 11 does not provide for a recovery of attorney’s fees. However, the request is for this Court to balance benefits, ensure access to the courts, and “equal the playing field.” As we have said, this case presents very unusual circumstances under which an award of fees may be considered under equitable and Diñé bi beenahaz’áanii principles.
Pursuant to 7 N.N.C. § 204, Diñé bi beenahaz’áanii must serve as the primary interpretive source for doctrines not addressed by statute. Section 204 provides, inter alia:
The courts shall ... utilize Diñé bi been-ahaz’áanii whenever Navajo Nation statutes or regulations are silent on matters in dispute before the courts.

Id.

The Navajo Nation Council has persisted in applying state and federal doctrines verbatim over the bedrock principles of our civilization in arguing their positions in this case. Frankly, this Court is exhausted by our seemingly never-ending exercise in reminding the Council that we are a unique sovereign governance system within the diverse American governmental framework, based on our own unique civilization, and on our own terms.
*210 We are well into the third decade of Indian Self-Determination, As the federal policy of self-determination has become solidified and stable, we are growing into a stable sense of our government according to set and coherent principles. We have progressed beyond a sense of alienation from the American mainstream into a sense of confidence and self-belief.
Recently, in EXC v. Jensen, we stated: In this day and age, the Navajo People are proud American citizens ... Our laws, although indigenous and extra-Constitutional, are American domestic laws that will endure for future generations through the Federal policy of Indian self-determination. Our laws reflect our indigenous cultures and practices. They are vital to the survival of our culture, which is not only a Navajo heritage, but a heritage of the American people.
While our laws are not covered under the Constitution, they are American laws of a unique American sovereign governing system. Fully cognizant of the complexity of the legal environment and rising to the burdens of responsible government, the Navajo Nation has safeguards in place to afford due process to all individuals subject to our jurisdiction.
The Navajo Nation, while lacking a Constitution, has written organic laws which “set the boundaries for permissible governmental action by the legislative, executive, and judicial branches of the Navajo Nation.”[3] Doctrines of checks and balances, separation of powers, accountability to the People, and service of the anti-corruption principle formed the premise for “The Title II Amendments of 1989” (Title II Amendments) enacted by Navajo Nation Council Resolution CD-68-89 on December 15, 1989,[4] which established our three-branch government. Principles of due process, equal protection, the right to counsel in criminal cases, rights of assembly and petition, the right to bear arms, freedom of religion and other rights closely tracking the United States Bill of Rights are guaranteed by the Navajo Nation Bill of Rights (1986). Judicial fairness and independence and access to the courts are guaranteed by the Judicial Reform Act of 1985. The above laws, in addition to substantive rights found in the Navajo Treaty and broad principles of fundamental fairness in our tribal Fundamental Laws, “set the boundaries for permissible governmental action by the legislative, execu-five, and judicial branches of the Navajo Nation,” and are collectively our “fundamental, organic laws.”[5]
EXC v. Jensen, No. SC-CV-07-10, 9 Am. Tribal Law 176, 190, 2010 WL 3701050, at 12-13 (Nav.Sup.Ct. September 15, 2010).
We are a delicate, resilient new partid-patory democracy, not infallible, and which will make mistakes as we mature, but which the three branches relied on by the People to work together to ensure the survival of our way of life in the modern era will step up to the challenge as a proud and unified government presenting a unified set of doctrines and principles to our people and the world.
b. Issues Raised By Amicus
Three Delegates argue that issues may not be raised by amici. However, they cite *211 no authorities. Whether or not amici may raise additional issues implicates the Diñé concept of fundamental fairness and the doctrine of standing as established in the Navajo Nation.
In Judy v. White, 8 Nav. R. 510, 5 Am. Tribal Law 418 (Nav.Sup.Ct.2004), we recognized the right of a private citizen concerned about the legitimacy of governmental action to bring her concern to the court. In doing so, we addressed the doctrine of standing “pursuant to our own common values of substantial justice rather than as the term is understood in federal courts.” Id. at 530, 5 Am. Tribal Law 418. Fundamental to the doctrine as we understand it is the ability of community members to speak to an issue. We stated:
It is abhorrent to the Dine Life Way to violate the right of a community member to speak or to express his or her views or to challenge an injury, whether tangible or intangible. This right is proteet-ed to such an extent that the right to speak to an issue is not limited to the “real party in interest.” Rather, the right belongs to the community as a whole, and any member of that community may speak.
Id. at 531, 5 Am. Tribal Law 418.
Rules concerning the ability of amici to add additional issues are not hard and fast in the various non-tribal state and federal jurisdictions. See. e.g., U.S. Fidelity & Guaranty Co. v. Victory Land Co., Inc., 410 So.2d 359 (La.Ct.App. 4th Cir.1982), writ denied, 412 So.2d 1113 (La.1982) (ami-cus permitted to implicate additional issues in exceptional circumstances); cf. U.S. v. State of Mich., 940 F.2d 143 (6th Cir.1991) (amici have no “right” to institute any proceedings in a litigation). In no non-Navajo jurisdiction are appellate courts prohibited from addressing issues raised solely by amici.
Under our own appellate court rules, amici may only file briefs by permission of the Court. See N.R.A.C.P. Rule 13. Ami-cus briefs are usually sought by this Court on matters of public significance, and few matters are of greater significance than governmental matters impacting the public treasury. In Halona v. MacDonald, we affirmed a ruling by the Shiprock District Court which stated that “when called upon, the court may not decline the obligation to (address the misappropriation of public funds).” Halona v. MacDonald, 1 Nav. R. 341, 351 (S.R.Dist.Ct.1978), aff'd, Halona v. MacDonald 1 Nav. R. 189 (Nav.Ct.App.1978).
While “it is not for us to choose who may request judicial review,” Judy, supra at 530, 5 Am. Tribal Law 418, citing Downey v. Bigman, 7 Nav. R. 176, 177 (Nav.Sup.Ct.1995), however, we must acknowledge that the right to institute a proceeding and management of a case is vested in the parties, who expect no undue interference from third parties who become part of a case by order of a Court without party input or agreement. We have said that the right to have a matter heard has to do with expectations. In re A.M.K., SC-CV-38-10, 9 Am. Tribal Law 191, 2010 WL 4159270 (Nav.Sup.Ct. October 8, 2010) citing Staff Relief, Inc. v. Polacca, 8 Nav. R. 49, 59, 2 Am. Tribal Law 512 (Nav.Sup.Ct.2000). An amicus expects the Court to take into account issues it raises as a friend of the court. The parties expect to be able to manage their eases without undue interference from third parties, but also expect amici to play a substantial input role in furtherance of the litigation. The Court expects amici to assist in filling in what parties may have missed and broaden understanding of the issues so that the Court’s decision, particularly on issues of public significance, may be fully informed.
*212 We find no legislated restriction on amiei to raise issues not otherwise raised by parties. Our existing caselaw and Dine egalitarian and fundamental fairness principles permit robust input by ami-ci while safeguarding the expectation of the parties. Therefore, we hold that amici may raise issues not brought up by the parties but may not otherwise function as a party. Amicus issues shall be addressed by the Court where “exceptional circumstances” exist as determined by the Court. Otherwise, amici have no right to have their issues addressed by the Court.
We find that exceptional circumstances exist under Halona, supra, pursuant to which the Court of Appeals affirmed that it may not decline to address issues concerning misappropriations out of public funds when brought to the Court’s attention. The public treasury belongs to the Navajo people, and the legitimacy of public spending is a civil rights issue under which judicial review is mandated under the Indian Civil Rights Act. Halona, supra, 1 Nav. R. 189 (Nav.Ct.App.1978). We stated:
There are occasions when a private citizen’s interests rise above the policy decision represented by the expenditure and reach the level of civil rights which the legislative body is no less charged with protecting than the courts ... The Navajo People are supreme and all residual power lies with the People. In the end, all monies spent by the Navajo Tribal Council are monies of the Navajo People.”

Id.

Based on the foregoing, Three Delegates’ jurisdictional challenges are DENIED.
IV.
ADMISSIBILITY OF MEMORANDUM
Mr. Whitehorse sought to submit a March 30, 2005 memorandum from Mr. Seanez as Chief Legislative Counsel to Leonard Chee as Chair of the Education Committee. As an offer of proof, Mr. Whitehorse described the memorandum as containing legal advice on the prohibition against a Navajo Nation entity using certain grant and contract funding to litigate against another Navajo Nation entity. However, Three Delegates objected to the admission of the memorandum on the basis of attorney-client privilege. Appellee and amicus NNDOJ verbally responded and amicus NNDOJ also submitted a Brief on Waiver of Attorney-Client Privilege at this Court’s request. The issue centers on 2 N.N.C, § 1964(G) as effective prior to the Office of Legislative Counsel Amendments of 2010 (Amendments). Under section 1964(G), privilege is held by the Attorney General, who has the sole ability to approve waivers of attorney-client privilege in communications between the Navajo Nation governmental and its attorneys in the period during which the memorandum was issued. All Navajo Nation attorney-client communications is protected, regardless of whether they contain legal advise.
We note that the privilege traditionally belongs to the client, in this case, the Chair of the Education Committee, and section 1964(G) does not abrogate this traditional understanding but adds the further requirement of approval of any client waiver of the privilege. Because Three Delegates represent the Council as RPIs, their objection is taken as an objection on behalf of the Council. Therefore, Mr. Whitehorse’s request to submit the March 30, 2005 memorandum is DENIED.
VI.
CONCLUSION
This Opinion and Order disposes of all preliminary matters in this attorney fee *213 phase of this appeal. A formal opinion on the legitimacy of the Litigation Fund and award of fees will follow.

. Concerning the federal appellate system, which are courts of limited jurisdiction, the U.S. Supreme Court stated in Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) that "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, see Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962), or where "injustice might otherwise result.” Hormel v. Helvering, 312 U.S.[ 552], at 557, 61 S.Ct. [719] at 7211 85 L.Ed. 1037(1941)].”

. Shirley v. Morgan, No. SC-CV-02-10, 9 Am. Tribal Law 46, 60 (Nav.Sup.Ct. May 28, 2010).

. id.

. Bennett v. Navajo Board of Election Supervisors, 6 Nav. R. 319, 323 (Nav.Sup.Ct.1990).