OPINION

On September 21, 2010, this Court held a motion hearing on the matter of Appellant Diñé College’s (College) motions to stay execution of the Navajo Nation Labor Commission’s April 6, 2010 decision enjoining the College from further extending Appellee Ferlin Clark’s (Clark) paid administrative leave and ordering that Clark be reinstated to his full duties as President of Diñé College. We issued our decision on the same day, granting the College’s Petition for Stay of Execution and enjoining enforcement of the Commission’s decision. In that Order, we also asked for briefs on a matter raised by Amicus Jack C. Jackson, Sr. regarding the legitimacy of this appeal, which was filed after the Government Services Committee’s removal of members of the Diñé College Board of Regents without duly appointed successors, leaving the Board without a quorum. In addition, we took under advisement the issue of whether there presently exists an employment contract between Clark and the College, which has been fully briefed and argued. We will address both these matters in this opinion.
Finally, we stated we would decide at a later date whether oral argument is warranted in the appeal pending before the Court as to possible prerequisites to the Navajo Nation Labor Commission’s jurisdiction for injunction purposes. As the disposition of other issues remaining in this appeal renders this issue moot, there will be no need for a hearing on this final issue.
I
PROCEDURAL HISTORY
On March 5, 2010, Clark filed a petition for preliminary injunction with the Commission, challenging the extension of the College’s placement of him on paid administrative leave in order to investigate allegations that he “engaged in certain unprofessional and unacceptable conduct that includes, but is not necessarily limited to, creating a hostile, intimidating working environment for numerous College employees and preferentially treating a select few who [he] deemed to support [his] actions and decisions while treating those [he] deemed not to support [him] with prejudice.” Pet for Stay of Execution, at 8. Clark had been placed on administrative leave by the Board of Regents (Board) since January 25, 2010. The Board had hired an independent investigator to look into his conduct on February 24, 2010.
On March 24, 2010 the Commission held an evidentiary hearing. On April 6, 2010 the Commission granted the injunction on the basis that the College Personnel Policies and Procedures Manual (Manual) limited such leave to 30 days unless formally extended.[2] Although the College finally *351 did extend the leave with the concurrence of the Human Resources Director on March 20-22, 2010, the Commission said that this was not done within the prescribed time period. The Commission enjoined further administrative leave and ordered Clark reinstated to his full duties as college president. That same day on April 6, the College filed a Request for Stay of Preliminary Injunction Order with the Commission. The Commission has never issued any ruling on the College’s request.
On April 26, the Government Service Committee (GSC) voted without explanation to immediately remove three Regents from the Board, leaving the Board with three active serving Regents, which is below the number needed for a quorum. On April 27, 2010, following a Board vote that day, the College represented by Patterson Joe, its Legal Counsel of record in the matter before the Commission, filed a Notice of Appeal challenging the Commission’s decision.
On May 31, 2010, Clark’s existing contract for employment expired on its own terms. Clark continued to occupy and function in the college president’s position. Since April 26, the removed Board members had not been replaced, therefore there was no Board enabled to address contract issues with Clark.
On July 27, the independent investigator returned a 172-page single-spaced report substantiating numerous allegations concerning Clark’s conduct raised by College employees. However, there was no Board able to receive, review or accept this report. To this day, the removed Board members have not been replaced and there remains no functioning Board.
On August 30, 2010, Diñé College filed an Emergency Petition for Stay of Execution of the Commission’s Order on August 30, 2010, attaching to it the independent investigator’s report and raising new and urgent concerns that Clark was now terminating employees who had testified against him in front of the Commission, demonstrated against him, or otherwise questioned his authority by asking him to produce a current employment contract. On September 8, 2010, Diñé College filed a Request for Immediate Issuance of Stay alleging intimidations and firings of further employees since the filing of the Petition. The College’s request was granted. This Court ordered Clark to cease all duties as college president. Jack Jackson, Sr. temporarily assumed the college presidency pursuant to a May 10, 2010 Standard Delegation of Authority.
On September 16, 2010, Jackson asked leave to file an amicus brief or in the alternative, for leave to intervene as a party in his capacity as acting president of Diñé College. On September 20, 2010, Clark filed his Response to Motion for Emergency Stay.
On September 21, 2010, a hearing on the issue of the College’s request for stay of execution was held at the Dine College Student Union Auditorium at Tsaile, A number of issues were urged upon the Court. Jackson claimed that, as acting president, he was the rightful representative of the College and should be permitted to intervene as a party. Jackson further claimed that the appeal filed by Joe for the College was unauthorized and should be dismissed. The College as represented by Joe objected, stating that the president lacks the authority to step into *352 the shoes of the Board and pursue litigation. Additionally, Joe informed the Court that there have been more terminations of college employees at the behest of Clark since their petition was filed. Finally, both parties argued at great length the existence or non-existence of a current employment contract between the College and Clark.
We issued a verbal order immediately following the hearing, and the same day issued a written Order permitting Jackson to present an amicus brief but denying his intervention as a party; granting the College’s petition for stay; and requesting briefs on the matter of the legality of the GSC’s removal of the Board members resulting in reduction of the Board to below quorum, which impacted on the authority of the Board to pursue this appeal.
II
JURISDICTION
Appeals from Commission decisions are prescribed by statute. Decisions of the Navajo Nation Labor Commission are generally appealable to the Supreme Court of the Navajo Nation pursuant to IS N.N.C. § 613(A). However, petitions for stays of Commission orders must first be filed with the Commission with an opportunity for response by the adverse party unless the Commission has otherwise approved a stipulation by the parties. 15 N.N.C. § 613(B). A petition for a stay may be filed with the Supreme Court if the petition to the Commission is denied, which may grant the stay upon satisfaction of an appeal bond, or otherwise.[3] See N.R.C.A.P. Rule 25(d). In this case, the College petitioned this Court for a stay almost four months after they had filed for a stay to the Commission with no response from the Commission. We deem the inaction by the Commission over such a lengthy period a denial for purposes of N.R.C.A.P. Rule 25(d), and find the College’s petition for a stay of execution is properly before this Court.
Events have overtaken this appeal since it commenced, and issues regarding standing and the expiration of an employment contract have shaped the arguments of the parties and now dictate the direction of this Court’s opinion. Several issues are raised by Amicus, while the parties themselves have argued other issues. All issues raised are germane to the Commission’s order reinstating Clark as college president. However, the legal questions have evolved due to changed circumstances of Clark himself due to the expiration of his employment contract on its own terms and his assertion, contested by the College, that a current contract now exists.
We have stated that issues not raised below are not appealable, Gudac v. Marianito, 1 Nav. R. 385, 394 (Nav.Ct.App. 1978), and failure to object to matters raised in a lower court will constitute a waiver of any right to review on appeal, Navajo Nation v. Bedonie, 2 Nav. R. 131 (Nav.Ct.App.1979) However, we have long reserved the right to raise legal issues not raised by the parties. Brown v. Todacheeney, 7 Nav. R. 37, 42 (Nav.Sup.Ct.1992). In this case, the contract issues could not have been raised to the Commission because they exist as a result of changed circumstances that occurred in the course of this appeal. We will therefore address these issues.
*353 Finally, Amicus raises jurisdictional arguments not otherwise raised by the parties. Jurisdictional arguments may be raised on appeal for the first time. Phillips v. NHA, 8 Nav. R. 751, 756 n. 3, 6 Am. Tribal Law 708 (Nav.Sup.Ct.2005). The Supreme Court may also take notice of jurisdictional facts for the first time on appeal on its own motion. Manygoats v. Cameron Trading Post, 8 Nav. R. 3, 13, 2 Am. Tribal Law 492 (Nav.Sup.Ct.2000). Additionally, we recently held that an ami-cus may raise issues not brought up by the parties but may not otherwise function as a party. Nelson v. Initiative Committee, 9 Am. Tribal Law 204 (Nav.Sup.Ct.2010). Therefore, we will address jurisdictional issues raised by Amicus.
Ill
STANDING
Amicus Jack C. Jackson, Sr. has asked this Court to dismiss the appeal in this matter because it was filed on April 27, 2010, the day after the members of the Board of Regents were removed by the Government Services Committee (GSC), which reduced the Board to below quorum. Because Diñé College is a Navajo Nation entity pursuant to 1 N.N.C. § 552, and whose stewardship and operations are controlled by statutory provisions at 10 N.N.C. §§ 2001 et seq., an unauthorized filing by the College goes to standing, which is a jurisdictional issue.
A quorum of 5 members must be present for formal action to be taken by the Board. 10 N.N.C. § 2008. Amicus asserts that in the absence of a constituted Board due to the Regents’ removal by the GSC, the president has authority to act on behalf of the College. Amicus cites Section IX.3 of the Bylaws of the Board of Regents (“Bylaws”) as the authority for this assertion. Section IX.3 of the Bylaws states:
“The College President shall serve as the Chief Executive Office of the College; is responsible and accountable to the Board of Regents for the discipline and successful conduct of the College and supervision of each of its campus and departments; and shall take every initiative in A) implementing policies of the Board of Regents and College; and B) promoting the College’s development and efficiency.”

Id.

Pursuant to 10 N.N.C. § 2001 et seq., authority and control over Diñé College is delegated to the Board by the Navajo Nation Council. Under the statutory scheme, the Board has the responsibility to “retain qualified and competent attorneys for consultation with the Board and preserving and defending the legal rights and interests of the College.” Section 2016(E). The Board may define “the duties, authority and responsibility of officers of the Board” in the Bylaws pursuant to section 2012. The college president is an officer of the Board whose duties are described in the Bylaws. Section 2010(A). We do not see any delegation of the Board’s section 2016(E) responsibilities to the college president in the section of the Bylaws cited by Amicus, nor does the section cited describe any expansion of the college president’s authority in the event the Board is incapable of performing its statutory functions. The statutory scheme and the Bylaws cited do not invest in either Clark or Jackson the authority to make decisions concerning the legal interests of the College, including retaining counsel and authorizing or not authorizing the filing of appeals.
Amicus further claims that the office of the college president has inherent authority to step into the shoes of a non- *354 functioning Board. This Court finds such a claim absurd. The college president is an officer of the Board whose functions and duties are set by the Board as described in Bylaws established and duly adopted by the Board. In addition, the college president serves at the pleasure of the Board as contracted, pursuant to section 2017 and the Manual. The position is not the equal of the Board, may not override Board decisions, and carries no inherent authority permitting any individual holding its office to expand its functions beyond what is statutorily provided.
Accordingly, we find that the college president is not authorized to step into the shoes of the Board and act on behalf of the Board in authorizing or making any decisions concerning the legal interests of the College, including the retaining of counsel on behalf of the College.
We note that the Board, at 6 members, was not fully constituted even before the GSC’s removal of the three Regents on April 26, 2010. However, it was one member over quorum and was functional. This functioning Board had retained Patterson Joe as the College Legal Counsel and tasked him with representing the College before the Commission in the matter appealed. On January 25, 2010, this Board had placed Clark on paid administrative leave and on February 24, 2010, had hired an independent investigator to look into Clark’s conduct. The removal of the three Regents during the window period during which an appeal of the Commission’s April 6 decision must be filed to this Court created a void of leadership in the Board and immediately reduced the Board to non-functioning status.
At the hearing, we had expressed concern as to the motivation behind GSC’s removal of the three Regents at a critical juncture in the litigation between the College and Clark. Clark argues that we may not look into the motivation of the GSC in passing the resolution because the GSC is not a party and is unable to defend its action. We agree, and therefore will not look into the GSC’s motivation. However, we will examine the legality of the action itself insofar as it bears on the College’s standing in this appeal.
In pressing that this appeal should be dismissed because it was filed while the Board was non-functioning, Amicus relies on a May 5, 2010 opinion issued by the Chief Legislative Counsel upholding the authority of the GSC to immediately remove Board members and concluding that “Members of the Diñé College Board of Regents who have been removed by the Government Services Committee are no longer members of the Diñé College Board of Regents and do not continue to serve until their successors are duly appointed, qualified and seated.” Opinion No. CLC-02-10. The opinion focuses solely on the GSC’s removal power under 10 N.N.C. § 2003(B) and § 2005, and concludes that this power is absolute, constrained only by the GSC’s judgment that removal will serve the College’s best interests. However, the opinion fails to consider this power within the entirety of the College’s enabling legislation at 10 N.N.C. §§ 2001 et seq. Section § 2003(A) sets conditions for all actions by employees and officials of the Navajo Nation concerning the Board and provides that they “shall not interfere with or interrupt the day-to-day activities of the Board of Regents.” In addition, section 2004(B) permits a Regent to serve until their successor is chosen and seated in order that a quorum of the Board exists,
The Court will read provisions of a statute comprehensively to further the purposes of the law, making sense of all statutory requirements.” Kesoli v. Anderson Security Agency, 8 Nav. R. 724 (Nav.Sup.Ct.2005).
*355 In this case, the GSC’s actions immediately reduced the Board below a quorum and, therefore, unable to perform its statutory functions. It is beyond dispute that this action interfered with the day-to-day activities of the Board as prohibited by 10 N.N.C. § 2003(A).
The importance of having a duly constituted Board at all times is emphasized in 10 N.N.C. § 2004, which provides for Board members to serve staggered six-year terms. As can be seen in the matter before us, the GSC’s reduction of the Board to below quorum has left the College as a governmental entity without decision-makers at several critical junctures. Namely, to authorize this appeal; to address the expiration of Clark’s employment contract on May 31, 2010; and to receive, review or take action on the July 27, 2010 report submitted by the independent investigator regarding Clark’s conduct.
We note that Patterson Joe, as the duly retained Legal Counsel for the College, had a fiduciary duty to ensure that the Commission matter, to which he was duly assigned, was not lost due to a non-appeal when the Board was incapacitated. As counsel of record in matters concerning Clark, Joe acted in accordance with 10 N.N.C. § 2016(E), supra, and within his fiduciary duty to protect the College’s legal interests by filing the appeal during the Board’s apparent incapacity. However, this does not fully address the confines of our statutes in regard to standing of a Board incapacitated due solely to unexplained governmental action.
We find that the GSC’s reduction of the Board to below quorum by its immediate removal of the Regents on April 26, 2010 was prohibited by law as it violated 10 N.N.C. § 2003(A). Consequently, we HOLD that the Regents were not legally removed and, therefore, continued to serve during the period this appeal was authorized. We further HOLD that the Regents continue to serve in their positions today without interruption.
The appeal is properly before the Court.
IV
EMPLOYMENT CONTRACT
Clark claims that although his employment contract expired by its own terms on May 31, 2010, the Board had, in fact, entered into a new contract with him. In the alternative, Clark asserts that he may not be terminated without a proper ceremony because of the medicine bundle entrusted to him when he became college president.
At the time this appeal was filed on April 27, 2010, Clark’s employment contract with Diñé College, effective for three years, was still in force. Pursuant to Title 10 of the Navajo Nation Code, the Board of Regents (Board) was responsible for his hire and supervision. His contract with Diñé College was from May 17, 2007 and due to expire May 31, 2010. As the contract called for an intent to renew or extend the contract to be communicated in writing 180 days before the expiration date, on November 21, 2009, the Board met and voted to send Clark a written letter of intent to renew and such a letter was sent to Clark by Tah. However, the College Legal Counsel, Patterson Joe, subsequently informed Tah that the November 21 meeting lacked a quorum due to the status of one of the student body representatives. The Board had to re-address the issue at their next meeting on December 18, 2009. At this meeting, the Board again voted, this time with a proper quorum, to send Clark a written letter of intent. Following this meeting, Tah signed a resolution which stated that an aetual employment contract for Clark had been approved by the Board by a 5-0 vote upon motion and second by Board members. Mr. Tah asserts that he signed by *356 mistake, as the vote that did take place concerned the Board’s intent to negotiate a contract, not approval of a finished contract. In any case, at the Board’s next meeting on January 16, 2010, no employment contract was approved. Instead, on January 25, 2010, the Board placed Clark on administrative leave with pay so that the College could conduct an investigation into allegations of misconduct by Clark from numerous College employees. There does exist a contract signed only by Clark, containing hand-written changes to the year of expiration from “2014” to “2013,” initialed by Clark.
Clark asserts that Tah’s signature on the resolution created a binding contract. However, we have not seen any provision in Title 10 or any Bylaws submitted to this Court that authorizes the Board president to enter into employment contracts without the Board’s actual agreement. There is no provision that would bind the College to contracts or promises made by the Board president in the name of the Board when there is no actual Board action. Even if an employee reasonably believes that a contract exists on the Board president’s signature without actual assent by the Board itself, a contract is not created. In this case, there is no actual signed contract, only a purported Board approval of contract terms submitted by Clark, whose expiration date appeared to have been changed by Clark himself, therefore muddying what contract term had actually been “approved” by the document signed by Tah. We note that a resolution approving a contract merely permits a contract to be signed and is not the contract itself and does not bind the parties. This Court has not been presented with a signed contract. We note that a functioning Board was in place between December 18, 2009 and April 26, 2010 and no contract was signed throughout this period notwithstanding the December 18, 2009 purported Board approval.
Only the Board has the authority to approve contracts for the College. 10 N.N.C. § 2017(B)(8). Neither the statutes nor Bylaws endow the Board president with apparent authority, or make him an agent of the Board able to bind the College in contracts on his own signature without actual Board authorization. Section 2011 provides that “No individual power or authority to act for or on behalf of Diñé College shall attach to any Regent by virtue of that office, except as may be expressly given by this Chapter, the Bylaws, or resolution of the Board.” 10 N.N.C. § 2011. The limitations of the powers of the Board president is plain, and Clark would be familiar with this provision.
Clark further asserts that he cannot be considered terminated until a proper ceremony is performed in which the medicine bundle entrusted to him is formally retrieved. We note that the Termination provision of Clark’s expired Employment Contract (effective May 17, 2007 through May 31, 2010) provides specifically that the Board may remove the college president upon written notice “without cause and without recourse” and no ceremony is otherwise required. Appellant’s Supplemental Filing, Ex. A at 4.
At oral argument, Clark’s attorney asserted that since Clark, as college president, had been entrusted with ceremonial items, Clark’s employment cannot be terminated without a formal ceremony of passing the ceremonial items to a successor.[4] While a proper ceremony as established by past leaders may take place at the time of transfer of leadership, such a ceremony, or the lack thereof, has no impact on the interpretation of contract *357 terns and duties of officers. No presentation has been made by the parties that the Board’s Bylaws and Manual dictate such ceremonial passage. We do not see where the Board has provided that duties and functions of offices either begin or terminate with ceremonies. The sacred items, entrusted with Clark by the College, belong to the College, and not to the individual. These ceremonial items are to be used in a positive way—to ensure that the College maintain its philosophy of Sa‘ah Naaghéí Bikéh Hózhóón.
Based on the foregoing, we find there was no extension of Clark’s employment contract which expired on its own term on May 31, 2010. Consequently, Clark has no present legitimate authority as president of the Diñé College.
We note that Clark has made use of this forum to contest the existence or nonexistence of a current contract, meaning that his actions as college president following May 31, 2010 and leading up to this holding fall in a grey area of contested litigation. Therefore, we further HOLD that actions taken by Clark as college president following May 31, 2010 through the date of our stay of execution on September 8, 2010 SHALL have legal force if uncontested by persons or entities affected. Otherwise, any exercise of Clark’s authority during this period that is contested SHALL first be ratified by the Board in order to have legal force. The Board is left to set the timeframes and form in which such contests are to be brought to their attention.
V
STAY OF EXECUTION
On September 21, 2010, we granted the College’s motion for a stay of execution of the Commission’s preliminary injunction for several reasons. Firstly, Clark’s employment status remained contested notwithstanding the expiration of his employment contract on May 31, 2010. For purposes of this litigation, Clark was employed pending resolution of the employment contract issue, and the injunction remained relevant to these proceedings. Secondly, the fact of continued terminations of College employees unsupportive of Clark, under the watch of an acting college president with close ties to Clark, was alarming to this Court.
With the resolution of the employment contract issue, we find that the Commission’s injunction no longer has any relevance to the College or Clark. It is resolved that there is no present employment contract between the College and Clark. Therefore, Clark no longer has a protectable interest in his employment, and Commission’s preliminary injunction against the College prohibiting the College from placing him on further administrative leave is no longer enforceable.
The order granting Clark’s motion for preliminary injunction dissolved by operation of law when Clark’s employment contract expired by its own terms. A further stay of execution of that injunction is therefore DENIED as moot.
VI
PRE-CONDITIONS TO FILING LABOR COMMISSION INJUNCTIONS
This appeal initially concerned an employment matter before the Commission *358 that did not proceed from a charge filed with the Office of Navajo Labor Relations (ONLR), but from a petition for preliminary injunction filed to the Commission without a charge. Initially, the parties contested the legality of the injunction due to the by-passing of the filing of the ONLR charge. The issue is now moot due to the expiration of Clark’s employment contract.
Preliminary injunctions may be granted by the Commission pursuant to Rule 4 of their Amended Rules of Procedures which provides:
REQUEST FOR PRELIMINARY INJUNCTION: Prior to the initiation of Commission proceedings on a Charge, the ONLR or Petitioner, upon notice to Respondent, may petition the Commission for appropriate temporary or preliminary relief ...

Amended Rules of Procedures for the Navajo Nation Labor Commission, Rule U

This Court has not previously been presented with appeals of Commission decisions entered under this Rule and would have addressed such a decision as a matter of first impression. The rule suggests that a charge is to be filed at some point, but is unclear as to whether and when a charge must be filed when Rule 4 relief is sought.
As we have stated, the matter is moot with little likelihood of future litigation on the subject in future between the parties, and extending litigation on this issue would incur unnecessary time and expense for the parties. Additionally, the Commission that would be impacted by any decision on the issue is not a party. The Commission should have the opportunity to speak to this issue and, perhaps, clarify their rule.
This Court will not address this issue further in the context of this case.
CONCLUSION
Amicus Jackson’s motion to dismiss this appeal is DENIED on the basis that the GSC’s reduction of the Board below a quorum was prohibited by law. The Court DECLARES and ORDERS that the three members of the Diñé College Board of Regents removed on April 26, 2010 were never lawfully removed from them positions as Regents and continue to serve.
Clark’s employment contract expired by its own terms on May 31, 2010 and was never renewed. Therefore, Clark is not presently under any employment contract as President of Diñé College. The Court ORDERS that Clark shall cease and desist from all functions as President of Diñé College unless the Regents authorize otherwise.
The Court further ORDERS that actions taken by Clark as college president following May 31, 2010 through the date of our stay of execution on September 8, 2010 SHALL have legal force unless contested by persons or entities affected. Actions of Clark that are contested SHALL first be ratified by the Board in order to have legal force. The Board is left to set the time-frames and form in which such contests are to be brought to their attention and resolved.
The College’s petition for stay of execution is DENIED as moot.

. According to the Manual,
Administrative Leave is not a disciplinary action; it allows investigation of an infraction of College policies or poor work performance. Upon the completion of the investigation the employee may return to their work place without penalty or being disciplined. Administrative Leave will not exceed 30 calendar days without the ap *351 proval of the Director of Human Resources and the immediate supervisor. An employee’s pay and benefits continue during administrative leave. Being placed on Administrative Leave is not subject to the grievance policy.
Manual, Section 900.03.

. Diñé College is exempt from the appeal bond requirement. 15 N.N.C. § 613(B)(5). Diñé College, formerly known as Navajo Community College, is considered "a distinct and semi-independent agency of the Navajo Nation Council,” see 10 N.N.C. § 2001, and defined as the Navajo Nation pursuant to 1 N.N.C. § 552(N).

 C laik’s attorney used the word jish to refer to the ceremonial items. However, the Court *357 is careful not to use that word because it is unknown from the record what exactly was entrusted to Clark.